## Bryant v. Strunk.
(Decided December 4,.1912.)

## Appeal from Whitley Circuit Court.

1. Patents—Location of According to Call.—A patent for 100 acres of land will not be run out so as to include 500 acres in order to reach lines of other surveys called for in the patent when to do so would give the tract of land a different shape from that shown by the plot, and it is shown that the surveyor did not in fact run the lines and was mistaken as to the location of the surveys referred to. In such a state of case the patent will be located according to the calls of the patent so far as this may be done without interfering with older surveys.

2.   Patents—Location—Conflict of Evidence—Question of Law   for
     Court.—When there is no conflict in the evidence the location of
     a patent is a question of law for the court.

E. L. STEPHENS GEO, P. JOHNSON for appellant.

J. N. SHARP, I. N. STEELY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Reversing.

Roberta S. Bryant claims a large body of land in
Whitley County under a patent for 9,600 acres issued
October 18, 1855, to Jacob Hudson and Cyrenius Wait.
The patent includes a large boundary of land from which
prior patents and surveys are excepted. She brought
this suit against Murray Strunk and others to recover
a portion of the land embraced in her patent which was
claimed by them. On a trial between her and Strunk,
Strunk was adjudged the owner of the land claimed by
him. She appeals.

Strunk's claim to the land is based upon a patent
issued July 12, 1883, upon a survey made June 12, 1882.
Although his patent is junior to hers, he insists that he
is the owner of the land covered by his patent by reason
of the fact that he and those under whom he claims had
been in the adverse possession of the land for more than
fifteen years before the bringing of the action. He does
not show a marked or well defined boundary to which he
claimed, but he insists that having entered under his pat-
ent, he was in possession of all the land which the pat-
ent includes. So it becomes necessary to locate his pat-
ent in order to determine the extent of his possession.
As claimed by him and as located by the judgment of
the circuit court, his patent, though calling for only 100
acres, in fact includes, according to one surveyor, 486
acres, and according to another 550 acres. The calls of
his patent are as follows:

"Beginning at a white oak corner of a survey in the
name of Alexander Murphy; running thence with said
survey S 8 E 16 poles to a spotted oak; thence S 2 E 44
poles to a gum; thence South 70 E 144 poles to a stake
in said line and in a line of John Murphy's survey;
thence with John Murphy's survey S 20 W 106 poles
to a stake in a line of Isham Strunk's survey; thence
with the same N 10 W 90 poles to a stake said Strunk's
corner; thence with his line S 31 W 180 poles to a pop-
lar and hickory; thence S 76 W 120 poles to a stake in
a line of Enos King's survey; thence with same N 23 W

70 poles to a white oak in James Strunk's corner; thence with his line to the beginning.''

It will be observed that the patent contains only nine calls, but as located by the surveyor it has about forty calls, and includes not only the body of land indicated on the plot below given, but as much more lying west of it. The circuit court submitted to the jury the question of the location of the patent; but as there is no dispute as to the facts, the proper location of the patent under the evidence is a question of law for the court. The following plot gives roughly the situation:

The beginning corner at a white oak, corner of a survey in the name of Alexander Murphy, is undisputed and is at 1 on the plot. The next line running from this corner S. 8 E. 16 poles to a spotted oak is also undisputed, this corner being at 2 on the plot. The next call S. 2 E. 44 poles to a gum is also undisputed, the gum being at 3 on the plot. The next call S. 70 E. 144 poles to a stake in said line, takes us to the figure 4 on the plot. But it will be observed that this point is in a line of James Murphy's survey, and not in a line of John Murphy's survey which is some distance south and east of this point. The next call of the patent is "thence with John Murphy's survey S. 20 W. 106 poles to a stake in a line of Isham Strunk's survey." If we run this line from 4 by the call of the patent we strike a line of Isham Strunk's survey, but the distance called for in the patent gives out before we reach the line. The surveyors instead of running from 4 to Isham Strunk's line, followed the lines of other patents until they reached John Murphy's line, and then ran with his line to Isham Strunk's corner and then followed his lines around. The proof shows that the surveyor who made the survey of the patent in fact ran only the lines from 1 to 2 and from 2 to 3, and we think it must be concluded that he thought he would reach John Murphy's land if he ran out from 3, 144 poles; for it is evident that he did not intend to go to James Murphy's corner, because he calls for a stake in said line. The shape of the land as indicated in the plot accompanying the patent shows that he did not intend to include any land east of the line 4-5; and our conclusion is that the line should be run from figure 4 by the patent call to the figure 5, and that the patent does not include any land lying east of this line. The next call of the patent is "thence with the same N. 10 W. 90 poles to a stake at Strunk's corner." As shown by Strunk's patent the line of that patent which is struck at 5 runs from a hickory and sugar tree, N. 62 W. 52 poles to an ash and a poplar; thence N. 10 W. 40 poles to an ash and a white oak. The ash and poplar are at 6 on the plot, the ash and white oak at 7. It will be observed that the call of the patent in contest is N. 10 W. corresponding with the call of the Isham Strunk survey, which is also N. 10 W., but that the distance is given as 90 poles, while there are two calls in the Isham Strunk patent, one for 52

poles and the other for 40 poles, the two making 92 poles. We conclude that the surveyor undertook to unite these two calls and thus reached the distance as 90 poles, and that what he intended to do was to run with the Strunk line. This takes us to 7. The next call of the patent in contest is "thence with his line S. 31 W. 180 poles to a poplar and hickory." The calls of the Isham Strunk patent, however, run from 7 to 8 to 9 to 10 to 11 to 12; and the sum of the distances called for in these lines is 181 poles. The next call of the patent in contest is S. 76 W. 120 poles to a stake in a line of Enos King's survey. This is a call of the Isham Strunk survey and takes us to the point 13. It is evident that the surveyor intended to run with Isham Strunk's survey from the time he reached it until he reached the point 13; and our conclusion is that he undertook to unite the calls by adding the distances together. It follows that the survey in question must be run with Isham Strunk's line from the point 5 to the point 13. But when we reach 13 we do not reach King's land, and to reach his land, a large number of calls must be put into the patent, making it to include on the west as much more land as it will include if closed from 13 on the patent calls. As the surveyor did not run these lines we are satisfied that when he called for a stake in a line of Enos King's survey, he simply made a mistake as to the location of the line of that survey, and that the patent must be closed by running the two closing lines from 13 to the beginning according to the patent calls as near as this may be done without interfering with the older survey. This would take us from 13 to 14 on the plot, and from 14 to the beginning. As thus run the patent will contain over 100 acres of land lying in a boundary conforming to the general shape of the tract as indicated on the plot made by the surveyor.

It is true the rule is that the calls of a patent for course and distance must give way to known or established objects found on the ground. But, after all, the rules that have been laid down on this subject are for the purpose of establishing the actual location of the lines and corners of the original survey, and they have little application where the lines were not run out in the original survey, but were simply laid down by the surveyor by protraction as was evidently the case in the patent before us. When the lines were not in fact run we have little to guide us except the calls of the

patent and the plot of the land accompanying the original survey. The plot accompanying the original survey is potent evidence in the determination of the general shape of the tract of land intended to be patented. To follow the lines of the other surveys in the case before us on the east to John Murphy's survey and on the west to King's survey, and then on around with still other surveys would be to make this tract include five times as much land as the grantee paid for and give the tract an entirely different shape from that which was evidently contemplated in the grant. While lines of a patent will be extended in order to reach a designated object, this will not be done where it is evident from all the facts that the surveyor simply made a mistake as to the location of the object, he supposing it to be at one place, when in fact it was at another. To run out this survey so as to reach on the east the lands of John Murphy and on the west the Enos King survey, we have not only to extend a line of the survey beyond any reasonable contemplation of mistake, but we have to put in a number of other lines on both sides of the survey. No rules of construction will justify such a departure from the calls of the patent and the plot accompanying the survey, where the lines were not in fact located on the ground; and the calls of the patent must control.

Although the appellee's patent was inferior to appellant's and was void as the land had been previously granted, still if he entered on his grant claiming to the extent of its boundary, he was in possession of all the land included in his patent; for his patent, though void, gave him color of title and defined the extent of his possession. The circuit court should by his instructions under the evidence have located the Strunk patent as above indicated. If on another trial there is evidence of adverse possession by the defendant, sufficient to take the case to the jury as to any part of the land, the court will by his instructions define the extent of possession under the facts shown by the evidence, so that only a question of fact will be submitted to the jury, and not both the law and the facts. (LeMoyne v. Hays, 145 Ky., 415; Burt & Brabb Lumber Co. v. Sackett, 147 Ky., 232.)

There is considerable evidence in the record in regard to the Copeland tract, or the Copeland survey, as it is sometimes called, but no such survey is produced and there is no proof of any marked boundary to which

Copeland or those claiming under him, held, as we understand the testimony.

Judgment reversed and cause remanded for a new trial and further proceedings consistent herewith.