## Strunk, et al. v. Geary.

(Decided December 10, 1926.)

## Appeal from McCreary Circuit Court.

1. Boundaries—Discrepancy in Acreage Between that Called for and Land Included Within Calls by Courses and Distances Held Immaterial.—That calls by courses and distances included 38.3 acres more than patent called for held immaterial, where shape of patent, run by such calls, was practically the same as that of recorded plat of survey on which patent issued.

2. Boundaries—Patent Will be Located According to Calls, Where Shape Would be Different than Surveyor's Plat Shows, if Run to Lines of Other Surveys Called for, and Surveyor was Mistaken as to Location Thereof.—Where patent, run to lines of other surveys called for, would be of different shape than shown by surveyor's plat on which patent issued, and surveyor did not actually run lines, and was mistaken as to location of such surveys, patent will be located according to its calls, so far as possible, without interfering with older surveys.

3. Boundaries—Courses and Distances Held Controlling in Locating Patent Calling for Line to Stake on Line of Adjoining Survey.—That patent, run according to courses and distances called for, corresponds to figures in surveyor's plat, incloses silver mine opened by patentees, and includes approximately acreage called for, held to require that courses and distances prevail over natural objects and established boundary lines, as showing that surveyor designated terminus of call as stake in line of adjoining survey under mistaken belief as to location of such line.

4. Adverse Possession—Adverse Possession Must be Actual, Continuous, Open, and Notorious, to Ripen into Title.—Possession must be actual, continuous, open, and notorious, to ripen into title by adverse possession.

5. Adverse Possession—Possession of Part of Recorded Patent Extends Only to Boundaries Called for Thereby.—Possession of portion of patent for statutory period necessary to ripen into title by adverse possession extends only to boundaries called for by recorded patent.

HENRY C. GILLIS for appellants.

STEPHENS & STEELY and W. S. GILREATH for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

On the 8th day of July, 1847, a patent was issued to Joseph Porter for 150 acres of land in what is now McCreary county. This patent was based on a survey bear-

ing date the 25th day of November, 1846. The first three calls of this survey have never been questioned and the corners designated by these calls may still be identified. The third call terminated at a "white oak on a branch." The fourth call read: "Same course 22 poles to the mouth of the branch on Big creek." About the year 1907 a dispute arose over this fourth call in the Porter patent and it was then determined by the disputants, one of whom was the appellee herein, that this call of the Porter patent should not be run to reach "the mouth of the branch on Big creek" because so to do would require a change in the course of this call from S. 30 W., this being the course of the third call to which the fourth call referred, to S. 60 W., and would further require the extension of the distance of this fourth call from 22 poles to 500 poles, and for the further reason that if the fourth call was extended to the mouth of the branch on Big creek then when the subsequent calls in the Porter patent were run, the patent would not close. The disputants therefore agreed that the natural object called for should be ignored and the fourth call should be run according to its course and distance, that is, S. 30 W. 22 poles. When the fourth call was thus run and the subsequent calls run according to their tenor, the patent closed. It is practically conceded by the appellants herein that the disputants were correct in so locating the fourth call.

On the 28th day of March, 1851, a patent for 100 acres of land lying in a southerly direction from the Porter patent above mentioned was issued to seven men. This patent was based on a survey of date September 9, 1850. This patent is known in this record as the "silver mine patent" because at the time it was procured it was thought that a silver mine would be found upon it. The beginning point of this patent is still easily identified and its first four calls are not in dispute, all of them terminating in natural objects. The fifth, sixth and seventh calls of that patent read thus: "Thence N. 35 W. high cliff, 150 poles to a stake in Coffey's line; thence his line due east 240 poles to a stake in his line; thence S. 14 W. 100 poles to the beginning." Although this patent called for 100 acres, yet the land included within its calls by courses and distances amounts to 138.3 acres. This discrepancy, however, is not material. When run by courses and distances the shape of this patent is prac-

tically the same as that of the plat of the survey now on file in the auditor's office and on which the patent for the 100 acres issued. It will be noted that the fifth call of this patent ends, according to its terms, with a stake in Coffey's line and the sixth call of this patent reads, "thence his line." Coffey, whose line is thus referred to, was a subsequent grantee of the Porter survey to which we have first referred, and when the 100 acre patent now under discussion refers to Coffey's line it is the same as though it were referring to Porter's line.

Now if the fourth call of the Porter patent had been run to "the mouth of the branch on Big creek," as that call stated, and then the next two calls of that patent been run from the mouth of the branch on Big creek, the stake referred to as the terminus of the fifth call in the 100 acre patent would practically be in the Porter line as so run, and the course of N. 35 W. 150 poles called for by this fifth call of the 100 acre patent would be correct. On the other hand, if the fourth call of the Porter patent be run as it is agreed it should have run by taking its course and distance and ignoring "the mouth of the branch on Big creek," and if the fifth call of the 100 acre patent be run according to the course and distance it calls for, then the stake at the terminus of such fifth call of the 100 acre patent nowhere hits any line of Porter (Coffey) but is far to the south of the southern lines of the Porter survey and the sixth call of this 100 acre patent, which is the northern line of that patent, is separated from the southern line of the Porter (Coffey) patent by a considerable boundary of land. It is this boundary of land, which separates the Porter patent from the 100 acre patent as thus run, which is in dispute.

On the 12th day of May, 1859, there was issued to Caldwell Stewart and Joseph Porter what is known as a blanket patent based on a survey dated September 27, 1850. This patent called for a large boundary of land in what was then Pulaski county but is now McCreary county, but there was excluded from it 21,520 acres theretofore patented. The appellee is now the owner of the land covered by that patent and the appellants are now the owners of the 100 acre patent hereinbefore referred to. This 100 acre patent being older than the appellee's patent, if the land in dispute in this case be included within the 100 acre patent then it belongs to the appel-

lants; but, if not, it belongs to the appellee as it is covered by his patent if not within the exclusions. On a trial before a jury on the question of ownership of this disputed tract, the court peremptorily instructed the jury to find for the appellee, and from the judgment entered on that verdict this appeal is prosecuted.

The appellants insist that inasmuch as the fifth call of the 100 acre patent terminates at a stake "in Coffey's line," and the next call of that patent reads "thence his line," and since Coffey's (Porter's) line was a line of a patent which was of record and susceptible of definite location, then in determining the boundaries of the 100 acre patent the most satisfactory evidence was this Porter (or Coffey) line, and that the courses and distances of the calls in the 100 acre patent must yield to the call for the line of Coffey's (Porter's) patent. If appellants be correct in this contention, then the course and distance of the fifth call of the 100 acre patent will have to be changed from N. 35 W. 150 poles to N. 20 E. 626 poles. The resultant shape of the patent by no means corresponds to the shape of the plat of the survey in the auditor's office and on which the patent was issued. Further, the acreage of the patent as thus bounded would amount to 294 acres, over twice larger than the acreage if the patent be run according to its courses and distances. Further, if appellants be correct, the closing line of the 100 acre patent, instead of running S. 14 W. 100 poles, will have a different course and a much longer distance. By running the lines of this 100 acre patent as appellants urge, there would be excluded from its boundaries the silver mine which the original patentees opened on this property, but which is included within the patent, if its calls be run according to their course and distances and ignoring the Porter or Coffey line. Some of the mesne deeds under which the appellants hold do not refer in any of their calls to the Porter or Coffey lines, but the calls of all of these mesne deeds call for the same courses and distances as appear in the original patent. In the case of Albertson v. Chicago Veneer Co., 177 Ky. 285, 197 S. W. 831, in commenting on the rule for ascertaining the boundary of a tract of land as here contended for by the appellants, and as set out in a number of cases cited in that opinion, among which are those of Alexander v. Hill, 32 Ky. L. R. 1147, 108 S. W. 225, and Rock Creek

Property Co. v. Hill, 162 Ky. 324, 172 S. W. 671, so confidently relied upon by appellants, this court said:

"The foregoing rules, however, have for their prime purpose the ascertainment of the true boundaries of lands, and are not designed to be used for the purpose of imposing boundaries other than the real ones, and the rule that courses and distances must yield to natural objects and established boundary lines, in fixing the boundaries of lands, does not apply, when it is evident that the call for a natural object or an established boundary line was made, under the mistaken belief that it existed at the point where the surveyor reported it to be, when in fact the natural object and boundary line was not at that point."

In the case of Bryant v. Strunk, 151 Ky. 97, 151 S. W. 381, we said:

"While lines of a patent will be extended in order to reach a designated object, this will not be done where it is evident from all the facts, that the surveyor simply made a mistake as to the location of the object; he supposing it to be at one place, when, in fact, it was at another."

We there held that a patent will not be run in order to reach lines of other surveys called for in the patent when to do so would give the patent a different shape from that shown by the plat made by the surveyor and on which the patent issued, and when it is shown that the surveyor did not in fact run the lines and was mistaken as to the location of the surveys referred to. In such a state of case the patent will be located according to the calls of the patent so far as this may be done without interfering with older surveys. The same principles underlie the opinion of this court in Kentucky River Timber & Coal Co. v. Morgan, 210 Ky. 113, 275 S. W. 12. From the fact that the 100 acre patent if run according to the courses and distances designated in its calls will correspond in shape to the map of the surveyor filed, and on which the patent issued, and from the fact that the silver mine opened by the patentees is within this 100 acre patent only if it be run according to the course and distances of its calls, and would be outside the patent if its calls were run as appellants contend they should be, and

from the fact that the fourth call of the Porter survey, although it was susceptible of easy determination and might have earlier been determined, was yet never actually determined until 1907, and from the fact that it is obvious that only the first four calls of this 100 acre survey were run by the surveyor, the fifth, sixth and seventh calls being simply protracted by him, and lastly from the fact that the terminus of the fifth call of the 100 acre patent would terminate practically in the Porter or Coffey line, if the fourth call of that Porter survey had been run to the mouth of the branch on Big creek, it seems to us to be perfectly plain that the surveyor in designating in 1850 the terminus of this fifth call of the 100 acre patent as a stake in Coffey's (Porter's) line did so under the mistaken belief that the fourth call of the Porter survey ran to the mouth of the branch on Big creek, and that when he fixed the terminus of this fifth call of the 100 acre patent at a stake in Coffey's (Porter's) line, he meant a line running from the mouth of the branch on Big creek and not the line which was in 1907 determined to be the correct location of the southern lines of the Porter 150 acre survey. Therefore, the rule that courses and distances must yield to natural objects and established boundary lines cannot apply here, because it is evident that the call for a natural object or boundary was made under the mistaken belief that it existed at the point where the surveyor reported it to be when in fact it was not at that point. This being true, the rule in the Bryant v. Strunk case *supra* applies, and the 100 acre patent should be located according to the courses and distances designated in its calls. When so done it corresponds to the figure in the surveyor's plat, incloses the land intended to be inclosed and includes approximately the acreage the patent calls for. We are firmly convinced that the evidence shows without any dispute that the patent when so run corresponds to the intention of the surveyor and covers the property intended to be patented. It results, therefore, that the court committed no error, the essential facts not being in dispute, in so locating the patent and in peremptorily instructing the jury to so find.

Appellants insist, however, that they were entitled to go to the jury on the question of adverse possession. So far as any possession of the strip in dispute is concerned, none was shown that was actual, continuous, open

and notorious within the rule of title by adverse possession. Appellants' argument on this point, however, runs thus: That their recorded patent was color of title and that when one is in actual possession of a part of a boundary under color of title and there is no actual possession by another of a part of the land within the well defined boundaries of the claimant, the law by construction carries his possession to the full extent of the boundary defined by his color of title, with certain exceptions not here pertinent, and that if maintained continuously for the necessary period and if it be adverse, open and notorious, such possession will ripen into title. The evidence does show that the appellants and their predecessors in title have had actual possession for the statutory period of a portion of the 100 acre patent that is not here in dispute. But under the rule as contended for by them, such possession extends only to the boundaries as called for by their recorded patent, and just where those boundaries are to be located is the question involved in this case. If they be located as appellants contend, they have a legal title traced back to the Commonwealth and they do not need to rely on the doctrine of adverse possession.. But if the boundaries of this 100 acre patent be located as appellee contends and which, as we have seen, is the correct location, then appellants' possession is extended only to the boundaries as thus located and does not cover the land in dispute, since the extension of the possession as authorized by the rule invoked by appellants goes only to the boundaries called for by the recorded patent relied upon as the color of title.

Therefore, as appellants never had such a possession of the disputed tract as ripened into title by adverse possession the court correctly declined to submit the issue of adverse possession to the jury.

It follows, therefore, that the judgment of the lower court is correct and it is affirmed.