## Staley v. Richmond et al.

(Decided October 14, 1930.)

EDWARD L. ALLEN and A. J. MAY for appellant.

B. M. JAMES and JOE HOBSON for appellees.

OPINION OF THE COURT BY COMMISSIONER STANLEY— Affirming.

In 1880, John Shepherd conveyed to Rebecca Ann Staley certain land on Brush creek in Floyd county, which was described in a general way from corner to corner along certain ridges and fences. One of the lines given was this: "Thence running up the ridge with the top of the same, binding on James Prater's line to opposite the cross fence; thence down the point to the cross fence; thence with the cross fence to the creek."

In 1892, Shepherd conveyed the land adjoining the above on the northwest to David Cooley under a general description. The line next to the above tract is thus given: "Thence with the top of the ridge down Brush creek, keeping the top of the ridge and running down the middle of the point below the school-house, binding on the Mike Staley line; and thence running around with said Staley fence down the Creek."

Rebecca Ann Staley in 1921 conveyed her land first above described to her son, the appellant John Staley. The Cooley land is now owned and possessed by the appellees, W. W. Richmond and others. Throughout all the deeds the descriptions are the same.

A conflict has arisen between the parties as to the location of the line between them, as represented by the quoted portions of the respective original conveyances. The problem before us is to establish the division line. About 12 acres of mountain land are involved.

Suit was filed by the appellant against the appellees, asserting the line to be a straight one, and claiming the parcel also through adverse possession. He asked that the line be established, his title quieted, and the defendants enjoined from committing trespass. The defendants set up their contention respecting the location of the

line, pleaded adverse possession, and prayed for similar relief. Judgment went for the defendant, and this appeal follows.

The parties agree upon the places of beginning and ending of the boundary line. The first corner is fixed by a rock with a cross-mark on top of a ridge in the Prater line, and the second or ending monument is near the end of a certain cross-fence. Appellant insists that the line is a straight and direct one running from the rock S. 53.40 W. 1,972 feet; thence down a ridge or point 200 or 300 feet to the end of the fence. Appellees contend that it follows the meanderings of the crest of a ridge or point approximately S. 28 W. about 1,000 feet; and thence along the center of a point or spur leading off westwardly toward the school-house to the end of a cross-fence. The line between the properties has never been marked in any way. The shape of the parcel of land involved is triangular and not unlike that shown on the plat published in the opinion of Carter v. Elk Coal Co., 173 Ky. 378, 191 S. W. 294, and that described in Varney v. Orinoco Mining Co., 201 Ky. 571, 257 S. W. 1016.

A "point" as used in these descriptions is defined and understood as the tapering end of a mountain or knoll. Describing the triangle parcel by A, B, and C, appellees claim the line runs along the main point A to B; thence down an offshoot or spur point B to C; thence a short distance to "end of cross-fence" and beyond to the beginning. Appellant claims the line is from A direct to C; thence down a point from C to the end of a cross-fence beyond. All agree that there is a main point or ridge leading from the agreed corner A, running approximately S. 28 W. to the old Staley home. But to follow this to its end would not lead to the next corner called for by the deed. To reach it, the line must leave this main point. Witnesses for the appellee testify that it forks about 1,000 feet from the starting place, and that there is a distinct spur or point from that fork in the direction of the schoolhouse and "end of cross-fence." They say also that a straight line run as appellant claims would cross a basin or cove and not follow any point. On the other hand, many witnesses testify for the appellant positively that there is no such spur or point and that the land between the corner at the "end of the cross-fence" and the main ridge or point is broken by benches and bluffs. It does appear from their testimony that there are several protuberances or elevations

between the two places which they do not regard as "points," because they do not reach the main ridge. However, at least one of the surveyors introduced by appellant apparently had no difficulty in finding such a spur point when he ran the lines called for in the deed from Shepherd to Cooley through which appellees claim.

The Cooley deed describes such a line along the main and spur points. But we must be controlled by the first deed executed by the common grantor, that is, from Shepherd to Staley, for the rule is a logical one that the subsequent act cannot change the first conveyance. 18 C. J. 281; Bryant v. Terry, 189 Ky. 489, 225 S. W. 242. The latter case also applies the rule that, in establishing the location of a disputed line, in case of doubt, that construction which is most against the party claiming under an uncertain survey should be adopted.

In construing the indefinite description of the line, another established rule must be brought to bear, namely, that monuments and natural objects mentioned are to be followed; and it is only in the absence of such reference or definite calls that a straight line will be drawn from designated corner to corner. The lines and descriptions given in these deeds have a definite and specific meaning, as determined in Carter v. Elk Coal Co., supra, Varney v. Orinoco Mining Co., supra, and Hylton v. Combs, 229 Ky. 1, 16 S. W. (2d) 754.

The decision of this case seems to rest on whether or not there is in fact a ridge, point, or spur leading from the main point which can be identified. If there is no such spur leading from it in the direction of the cross-fence appellant's contention for a straight and direct line would have to be sustained. It seems to us, however, that the evidence supports the chancellor's finding that there is such a spur, and that that is what is called for by the phrase, "thence down the point to the cross-fence." Fortifying this conclusion is the fact that the entire description in the Staley deed is along other easily identified ridges and points, and crosses the creek at certain designated monuments. It is hardly likely that all objects and monuments would be omitted in only one call, or that a direct line for a distance of more than one-third of a mile through a basin or flat would not have been so described. To sustain appellant's contention, the court would be compelled to interpolate these italicized words and make the calls read thus: Binding on Prater's line to a *marked rock* opposite the cross fence;

*thence a straight line across the flats 1,972 feet;* thence down the point to the cross fence.'' This we do not feel authorized to do.

A full consideration of this record convinces the court that the line between the parties is as established by the lower court.

The evidence respecting adverse possession is not sufficient to establish title. It is shown that in the disputed parcel appellant and his predecessors have entered at different times and removed timber, but done nothing more. Appellees and their predecessors have done likewise, though perhaps not to the same extent. It is uniformly held that that alone is not sufficient to establish title by adverse possession. Kentucky Union Co. v. Gilliam, 235 Ky. 316, 31 S. W. (2d) —, and cases cited.

The judgment is affirmed.