# Asher v. Fordson Coal Company et al.

(Decided May 30, 1933.)

MARTIN T. KELLY for appellant.

CLEON K. CALVERT for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming

This is a suit to enjoin trespass, and involves title to some timber land. It is suggested in the brief for appellee, "This case ought to go down in legal history in the same category with Jarndyce against Jarndyce." So it should. The suit was filed in 1904, and was not ready for trial until nearly twenty-five years had elapsed. It was prepared along with the case which reached this court under the style of Asher v. Stearns Land & Lumber Company, 241 Ky. 292, 43 S. W. (2d) 1012, 1013. It was observed in that opinion that "The case then followed the example of Rip Van Winkle, and took a long sleep." This case laid down on the sward beside that one and slept as long or a little longer. It was

finally disposed of by the Honorable Thomas D. Tinsley, as a special judge, by agreement.

The petition was filed by George V. Turner, as owner of the land, and the Ford Lumber & Manufacturing Company, as owner of the standing trees, against the appellant, A. J. Asher, who was claiming title through mesne conveyances as part of the Cheever grant (issued June 14, 1872, on a survey of May 4, 1871), of 206,800 acres, an area of approximately 347 square miles, in what were then Clay, Josh Bell, and Harlan counties. See Uhl v. Reynolds, 64 S. W. 498, 23 Ky. Law Rep. 759. The defendant, Asher, claimed under the Solomon Brock grant issued December 5, 1871, on a survey made August 18, 1870. So it is conceded that so far as the patents are concerned the defendant's title is superior. The land in dispute is in what was then Clay county, but is now Leslie county. By agreement of the parties, the case was sent to Bell county for disposition as a matter of convenience.

While the suit was pending, in 1910, the plaintiff Turner conveyed the property to the Kentucky River Timber & Coal Company. In 1918 it conveyed the land to Peabody as trustee. In 1923 his heirs and successors in trust sold it to the Fordson Coal Company, the appellee. Down until 1927 and after the case had been first submitted, it had continued in the name of the original parties, although Turner had died in 1922. Peabody also died that year. On March 1, 1927, the appellee Fordson Coal Company was permitted by the court to be substituted for Turner as the plaintiff. The other original plaintiff, Ford Lumber & Manufacturing Company, continued in the case, although it seems to have lost interest, and its name appears as an appellee herein. The appellant invokes the terms of sections 500, 509, and 510, of the Civil Code of Practice relating to revivor, and says that the action abated because of the death of Turner and Peabody. Section 509 provides the revivor shall not be made without the consent of the defendant after the expiration of one year from the time the order might have been first made. Section 510 directs the dismissal of the case if it appears to the court that the case cannot be revived without the consent of all parties. During all of this time the real party in interest was participating actively in the case, which still stood in the name of the original plaintiffs,

and there is no record of the defendant ever having raised an objection. One of the original plaintiffs, the Ford Lumber & Manufacturing Company, as stated above, continued in the case all along. When Turner died, although a party to the suit, he had not been interested in it for twelve years. So far as his interests or rights were concerned, it was not a case for revivor, but for the substitution of the real parties.

> Section 20 of the Civil Code of Practice provides: "If the right of the plaintiff be transferred or assigned during the pendency of the action, it may be continued in his name; or the court may allow the person to whom the transfer or assignment is made be substituted in the action, proper orders being made as to security for the costs."

In Fordson Coal Company v. Jackson, 7 F. (2d) 117, this identical question was presented to the United States Circuit Court of Appeals for the Sixth Circuit in another suit in which the same George V. Turner had been the plaintiff. It was said in the opinion:

> "Upon his death the action was suspended temporarily. When the interest of the sole plaintiff has been transferred pending the litigation, he must still be in esse after the transfer in order to permit the proceedings to continue in his name. La Pointe v. O'Malley, 47 Wis. 332, 2 N. W. 632, and authorities cited. It was not necessary to have the action revived after Turner's death. The order of substitution might have been made at any time under section 20 of the Code, without regard to section 509; but no valid proceedings could be had on the merits until such an order was entered."

However, it appeared that the judgment in that case had been rendered before the substitution was made, and, under the conclusion that no valid proceedings on the merits could be had until the order was entered, the writ of error was dismissed because the judgment was void. It was stated that the case stood below undisposed of. As shown above, the substitution was made in this case before the judgment.

It appears that Peabody did have an interest in the property at the time of his death, although he was never named as a party to the suit. About six months

after his death, his heirs and successors in the trust sold the property to the Fordson Coal Company. There was an interval from Turner's death in September, 1922, until March 1, 1927, so far as the title to the land in dispute was concerned, when the case stood in the name of the dead man, although the real parties in interest were always represented. The interesting phase of the question presented as to the right of revivor or of substitution as the case related to Peabody's interest need not be considered, however, for the order substituting the Fordson Coal Company as plaintiff discloses no objection or exception on the part of the defendant, and it must be deemed that he consented to the order and therefore that it was authorized by section 509 of the Civil Code of Practice.

The pleadings and the evidence made several issues as to the lines of the Brock survey and patent, but upon this appeal the controversy has been narrowed by concessions to the location and extent of the fifth line of that survey, and to the issue of adverse possession. The judgment did not locate the line as contended for by either party; hence both appeal.

The first and second lines of the survey have always been agreed upon as being the proper calls. The fourth line is, "N. 45 E. 100 poles to the gap in the divide between Buzzard's Branch and Mace's Branch." Abandoning different claims made in the trial court, both sides now agree upon the identity of the gap. But the call is 22 poles short of reaching that gap. The next call, which is that causing the dispute, is "N. 83 E. 130 poles to Carter Helton's line." That falls far short of reaching Helton's line. Extending the course an indefinite distance, the line would miss Helton. In order to reach Helton at the closest point, a variance of 18½ degrees and an extension of 173 poles are required. So this fifth call must be made to read, "N. 64½ E. 303 poles to the southermost corner of Carter Helton's patent." The next call is, "N. 25 W. 270 poles to a stake on top of the divide between Marrowbone (Creek) and Turkey Branch." In order to get from Helton's southermost corner to the ridge, the call must be made to read, "N. 55½ W. 262 poles," instead of "N. 25 W. 270 poles." The seventh call requires a change of only one degree in the course, the distance remaining the same. The eighth and last call works out all right.

The question seems to be simply this: Since the original survey is certainly erroneous, should the monuments be disregarded, particularly Carter Helton's line, and the courses and distances be followed, or should those calls be subordinated to the objects? Of course, the parties concede and recognize the elemental abstract rule that generally courses and distances must yield to fixed monuments or objects. The appellee and cross-appellant, Asher, however, maintains that the case must come within the qualification of that rule that, where in making a survey for a grant the original surveyor, in ignorance of the position or location of an object which he makes the terminus of one of his lines, calls for the object under the mistaken belief that it is at one place when in fact it is at an entirely different place, the bearings and distances reported by the surveyor will control the lines, and the call for the object will be disregarded. See McConnell v. Kenton, Hughes (1 Ky.) 257 (1799); Bosworth v. Maxwell, Hardin, 205; Smith v. Harrow, 1 Bibb, 104; Mercer v. Bate, 4 J. J. Marsh. 334; Ralston v. McClurg, 9 Dana, 338; Mathews v. Pursiful, 96 S. W. 803, 29 Ky. Law Rep. 1001; Jones v. Hamilton, 137 Ky. 253, 125 S. W. 695; Daniel v. New Era Land Company, 137 Ky. 535, 126 S. W. 108; Bryant v. Strunk, 151 Ky. 97, 151 S. W. 381; Albertson v. Chicago Veneer Company, 177 Ky. 285, 197 S. W. 831; Strunk v. Geary, 217 Ky. 113, 288 S. W. 1053.

There is evidence in the record that since 1865 Solomon Brock, and before him his father-in-law, Andy Simpson, and his predecessor, Washington Whitehead, lived in the area covered by the watershed of Turkey branch and that Brock claimed all the land on that creek. But he and the others seem to have lived at different points in this territory and the clearings were few and far between. There was never any deed exchanged between these parties, which was not an uncommon practice in that country, nor any definite boundary established. It was about 1870, when speculators came and began to appropriate vacant lands in that part of the state, that Solomon Brock concluded to have a survey made and to obtain a grant. His cousin, Newberry Brock, had had a survey made for himself, and he got the surveyor to run off the land for Solomon in his absence. He testified that he knew where his neighbor, Carter Helton, lived, and knew that he had a line

run up the river from near the mouth of Spruce Pine creek, and that it went above the mouth of Turkey branch, but how far above he did not know. He did know that the line was down near the main Middle Fork river, for Helton had shown it to him. He assisted the surveyor, and says that he made the calls and they intended to reach Carter Helton's line when the disputed fifth line of the Solomon Brock survey was made. It appears that none but the first two or three lines were actually run. As the trial court stated, there was no evidence showing that the surveyor did not know where the Carter Helton line was. Here is evidence that it was shown to him and that it was the intention of the survey to extend the lines to it. The chancellor held this as a finding of fact, and properly so adjudged. Morgan v. Renfro, 124 Ky. 314, 99 S. W. 311, 30 Ky. Law Rep. 533; Brashears v. Joseph, 108 S. W. 307, 32 Ky. Law Rep. 1139; Rock Creek Property Company v. Hill, 162 Ky. 324, 172 S. W. 671; Kentucky Union Company v. Shepherd, 192 Ky. 447, 234 S. W. 10.

The appellant claimed other lands than that embraced in the lines of the Solomon Brock survey as established by the court, as well as that within that survey. We fully concur in the reasons and finding of the learned special chancellor as thus expressed in his opinion:

"The defendant relies upon an adverse holding of the land described in the Ward deed and outside the Sol Brock survey as here located, and to sustain that contention offers a great deal of evidence concerning four old fields, or clearings shown on the map, exhibit 'J. M. C. No. 1.' I have very carefully read and considered this testimony. No witness knows when a single one of these fields or clearings was made nor how long it was used. No continuity of possession of these fields, or a single one of them, is shown by any witness in any person, or in any succession of persons; there is nothing in the testimony to define the extent of possession of Andy Simpson or any person under him, except from the date of the Sol Brock survey, and then only within the lines of that survey by field No. 4 at the head of Turkey Branch. This testimony is too vague and too uncertain to authorize a court to sustain a claim of adverse possession under it."

Appellee now admits that appellant is entitled to whatever land is embraced in the Brock grant when correctly located, so this conclusion need apply only to the land beyond the boundaries fixed by the court.

The conclusion in respect to the issue of adverse possession would seem to care for the point made by the appellant that to the extent covered by this occupation by Brock the Cheever patent was void under the authority of War Fork Land Company v. Llewellyn, 199 Ky. 607, 251 S. W. 663, and Crider v. Crum, 233 Ky. 414, 25 S. W. (2d) 1009. Brock and his predecessors at the time were living here and there, up and down the creek somewhat as nomads. A mere squatter who claims only where he is acquires no rights in the land beyond his actual inclosure. Bell v. Fry, 35 Ky. (5 Dana.) 341; Russell v. Marks, 3 Metc. 37; Shackelford v. Smith, 35 Ky. (5 Dana.) 232; Fuller v. Keesee, 104 S. W. 700, 31 Ky. Law Rep. 1099; Slaven v. Dority, 142 Ky. 640, 134 S. W. 1166; Burt & Brabb Lumber Company v. Sackett, 147 Ky. 232, 144 S. W. 34; LeMoyne v. Hays, 145 Ky. 415, 140 S. W. 552; Caughlin v. Wilson, 167 Ky. 35, 180 S. W. 40; Stearns Coal & Lumber Company v. Boyatt, 168 Ky. 111, 181 S. W. 962; Superior Oil Corporation v. Alcorn, 242 Ky. 814, 47 S. W. (2d) 973. The evidence as to the occupancy or appropriation of the disputed tract by Brock and his predecessors at the time and before the Cheever grant is insufficient to hold that it was not vacant land, or such as is contemplated by section 4704 of the Statutes providing that none but vacant land shall be subject to appropriation under the land grant statute, and that every entry, survey, or patent made or issued shall be void so far as it embraces lands previously entered, surveyed, or patented. See Crider v. Crum, supra.

Wherefore the judgment is affirmed on both the original and cross appeals.