## Fordson Coal Co. v. Napier et al.

(Decided Dec. 20, 1935.)

CLEON K. CALVERT and M. C. BEGLEY for appellant.

CRAFT & STANFILL for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This suit involves the title to a small tract of land in Leslie county, which the Fordson Coal Company claims is included in the Sizemore and Gibson 200-acre patent owned by it. The appellant filed an equity action in the Leslie circuit court against the appellees, and in its petition averred that they were trespassing upon a portion of its land by wrongfully cutting timber therefrom, and it sought to enjoin them from continuing to do so and to recover damages for the trespasses they had already committed. It also asked that it be adjudged to be the owner of the land. The appellees in their answer asserted title in themselves to the land upon which the alleged trespasses were committed, and denied appellees' alleged title thereto. Upon submission of the case, the court dismissed appellant's petition, thereby determining that it was not the owner of the land in controversy.

When the patent was granted, the land was located in Clay county, and the survey was made by Alex W. Chastain, the county surveyor. The surveyor's certificate was filed August 29, 1870, and the patent, known as patent No. 44844, was issued February 16, 1871. The land was thus described in the surveyor's certificate:

"Beginning on four beeches and an elm 60 poles below the mouth of Little Laurel fork the beginning corner to a 100 acre survey made for Joseph S. Gilbert and Moses S. Gilbert thence with a line of said 100 acres N. 55 E. 40 poles to a stake a corner to said 140 acres thence with said line S. 35 E. 60 poles to a stake in said line thence N. 55 E. 160 poles to a stake on the divide between Short Creek and the waters of the Little Laurel fork thence with said divide S. 35 E. 260 poles to a stake on said divide thence S. 55 W. 400 poles passing at Ed. Sizemore's Rockhouse to a stake on the divide between Little Stinnett fork, Little Laurel fork and the Trace branch of Lambs Tongue Hollow of Main

Laurel fork thence with said divide N. 35 W. 250 poles to a stake a corner to a 100 acre survey made for said Sizemore and Gibson thence with a line of said 100 acres N. 35 W. 200 poles to a stake a corner to said 100 acres thence with another line of the aforesaid 100 acres N. 55 E. 160 poles to the beginning."

Accompanying the certificate was a plat made by the surveyor. The description of the land in the patent is the same as the description in the surveyor's certificate, except that the fifth call reads:

"Thence S. 55 W. 400 poles passing Ed. Sizemore's Rockhouse to a stake on the divide between Little Stinnett fork, Little Laurel fork and the Trace branch of Lambs Tongue Hollow of Main Laurel fork."

It will be noted that the word "at," which appears in the surveyor's certificate, was omitted from the description of the land in the patent.

Three surveyors, who had surveyed and platted the Sizemore and Gibson patent, No. 44844, testified at the trial of the case; one as a witness for appellant, and two as witnesses for the appellees. Each filed a map as an exhibit with his deposition, and these maps were referred to frequently in the evidence and have been referred to in briefs of counsel. It appears that all of the original maps were lost. What purport to be copies of two of the maps have been filed, but it is apparent that the colors and numbers on the substituted maps differ from those used at the trial, which makes it difficult to grasp the significance of some of the evidence and many of the statements in the briefs. Most of the uncertainty, however, is as to the proper location of lines of the original survey which have no bearing on this controversy. The correct determination of the issue presented by this appeal depends solely upon the location of the fifth line of the patent. All parties agree on the location of the beginning point, and they agree as to the location of the first and second lines of the patent. From that point they are unable to run out the survey and make it close without changing materially the bearings or distances, or both, and they are unable to agree as to where and how these changes shall be made. All parties agree that the original surveyor actually sur-

veyed only the first and second lines, and from that point located the survey by protraction. In running the third call which reads, "N. 55 E. 160 poles to a stake on the divide between Short Creek and the waters of the Little Laurel fork," C. H. Queen, who surveyed the land for appellant, altered the bearing and distance to S. 87 E. 183 poles in order to reach the divide between Short creek and the waters of the Little Laurel fork. J. M. Culton, who surveyed the land for appellees, shortened the distance to 75 poles, and reached a point on the ridge between Potato Knob branch and Laurel fork. The fourth call of the patent reads: "Thence with said divide S. 35 E. 260 poles to a stake on said divide." In order to reach the fifth corner called for by the patent, the appellant's surveyor ran from the fourth corner fixed by him in a southwesterly direction, not in a straight line, but following the ridge, a distance of 265 poles. Culton ran a straight line from the fourth corner fixed by him, but changed the bearing 10 degrees and extended the distance to 283 poles. He reached the same point as Queen, however, for the fifth corner. W. H. Mattingly, who also surveyed the land for appellees, but whose map is not in the record, fixed the fifth corner at the same location. His third and fourth lines coincided approximately with the lines as surveyed by Queen. The fifth line is the only one which affects the land in dispute. No two of the surveyors agree upon the location of the sixth corner. The fifth line of the survey reads thus in the original certificate upon which the patent was issued: "Thence S. 55 W. 400 poles passing at Ed. Sizemore's Rockhouse to a stake on the divide between Little Stinnett fork, Little Laurel fork and the Trace branch of Lambs Tongue Hollow of Main Laurel fork." It is appellant's contention that the last part of this call mentions a monument which controls the line, and it therefore disregards the reference to Ed Sizemore's rockhouse and alters the bearing and distance of the line and runs straight from the fifth corner to the top of the divide between the three water courses referred to in the call. Queen's fifth line, instead of running S. 55 W. 400 poles, runs S. 20 W. 224 poles, and passes Ed Sizemore's rockhouse at a distance of more than one-fourth of a mile. Culton followed the bearing called for in the original certificate of survey, but he shortened the distance to 215 poles and fixed the sixth corner

at a point on the divide between Big and Little Laurel forks. The line as run by Culton excludes the land in controversy from the Sizemore and Gibson patent, No. 44844.

In 1890, J. L. Lewis, a surveyor, was employed by one of appellant's predecessors in title to locate this patent. He located the fifth corner at the same point fixed by Culton, Mattingly, and Queen. He ran the fifth line to Ed Sizemore's rockhouse following the bearing called for in the original certificate of survey, and made that the sixth corner to the survey. He then interpolated a new line running from this location to the top of the divide between Little Stinnett, Little Laurel, and Lambs Tongue branch, but, in order to do this, it was necessary to alter the bearing almost 90 degrees. He then closed the survey in the same manner as the appellant's surveyor. The patent as located by Lewis would include the land in controversy

Appellant insists that it was the manifest intention of the original surveyor to reach the monuments mentioned in his certificate of survey, and that both courses and distances must yield, where necessary, in order to reach these monuments designated as corners. It is a well-recognized rule that where natural objects are called for in a survey and they cannot be reached when the lines are run according to the courses and distances called for, the latter must give way to the natural objects. Fore v. Gilliam, 256 Ky. 591, 76 S. W. (2d) 893; Asher v. Fordson Coal Co., 249 Ky. 496, 61 S. W. (2d) 20; Fordson Coal Co. v. Osborn, 245 Ky. 539, 53 S. W. (2d) 937; Scott v. Thacker Coal Mining Co., 191 Ky. 782, 231 S. W. 498; Williams v. Brush Creek Coal Co., 149 Ky. 188, 148 S. W. 372.

It is a rule equally well established that mistakes in the calls of a patent may be corrected by referring to the original plat, and, in extending boundaries, attention should be given to the figure of the survey in the absence of any other controlling influence. Combs v. Jones, 244 Ky. 512, 51 S. W. (2d) 672. And, where it appears, as in the present case, that the surveyor did not actually run the survey out on the ground, but located the lines by protraction, the plat made by the surveyor will afford strong evidence of the shape and size of the survey. Swift Coal & Timber Co. v. Sturgill, 188 Ky. 694, 223 S. W. 1090; Bryant v. Strunk, 151 Ky.

97, 151 S. W. 381, 383; Strunk v. Geary, 217 Ky. 113,. 288 S. W. 1053. In Bryant v. Strunk it was said:·

"It is true the rule is that the calls of a patent for course and distance must give way to known or established objects found on the ground. But, after all, the rules that have been laid down on this. subject are for the purpose of establishing the actual location of the lines and corners of the original survey, and they have little application where the lines were not run out in the original survey, but were simply laid down by the surveyor by protraction as was evidently the case in the patent before us. When the lines were not in fact run, we have little to guide us except the calls of the patent and the plot of the land accompanying the original survey. The plot accompanying the original survey is potent evidence in the determination of the general shape of the tract of land intended to be patented. To follow the lines of the other surveys in the case before us on the east to John Murphy's survey on the west to King's survey, and then on around with still other surveys would be to make this tract include five times as much land as the grantee paid. for and give the tract an entirely different shape from that which was evidently contemplated in the grant."

In the instant case, the map of the Sizemore and Gibson patent made by appellant's surveyor is wholly dissimilar in shape and size to the plat made by the original surveyor, and the survey made by him contains approximately three times as much land as the patent calls for. Furthermore, Ed Sizemore's rockhouse referred to in the patent is a monument, as is the divide between the three streams mentioned in the same call, and it is wholly ignored in appellant's survey. The survey under which appellant claims is admittedly uncertain, and it has been held that in case of doubt in. establishing disputed lines, that construction which is most against the party claiming under an uncertain survey should be adopted. Staley v. Richmond, 236 Ky. 11, 32 S. W. (2d) 546; Bryant v. Terry, 189 Ky. 489, 225 S. W. 242.

The lower court fixed the fifth line of the Sizemore and Gibson patent by following the bearing called for in the certificate of survey and passing Ed Sizemore's

rockhouse. The line fixed by the court coincided approximately with the line claimed by the appellees to be the correct one, and excluded the land in controversy from the Sizemore and Gibson patent. It is unnecessary to determine the correctness of the court's finding relative to the other lines of the survey, since the establishment of the fifth line disposes of the controversy.

In addition to the testimony of the surveyors, there is in the record the testimony of a number of neighbors, who claim to be familiar with the disputed line, which tends to support the chancellor's finding.

The judgment is affirmed.