Dixie BLACKBURN et al., Appellants,

v.

POND CREEK COAL & LAND COMPANY, Appellee.

Court of Appeals of Kentucky.

Feb. 24, 1956.

E. J. Picklesimer, Pikeville, for appellants.

Hobson & Scott, Pikeville, for appellee.

MONTGOMERY, Judge.

The Pond Creek Coal and Land Company, appellee, filed this action against Dixie Blackburn, Clyde Maynard, Ernest Blackburn, and Emzy Blackburn, appellants, claiming that they had trespassed upon land owned by appellee and had mined coal therefrom. It was adjudged that appellee was the owner of all the coal in, on, and under the lands in dispute, together with mining rights, and was entitled to certain funds impounded as the proceeds of coal mined. Appellants also were enjoined from further mining of the coal, and the title of appellee was quieted.

This controversy concerns the ownership of the coal and mining rights under a tract of land lying in a hollow between two ridges, or spurs, on the south side of Cow Branch of Pond Creek in Pike County. John Rutherford conveyed the coal and mining rights under this land to W. J. Newingham and others in 1903. Appellee claims as successor under a chain of paper title from John Rutherford.

Dixie Blackburn, appellant, received a deed to the surface of the disputed tract in 1904 from John Rutherford, her grandfather. However, she denies her title by reason of this conveyance and claims title by adverse possession. She received a quitclaim deed from Fannie J. and Amos Runyon dated January 20, 1913, under which she claims to have entered into possession of the disputed land and to have acquired title by adverse possession.

The parties dispute the location of the dividing line between two old patents, the Adron Runyon 50-acre patent of 1840, and the William May 50-acre patent of 1849, and the effect of a conditional line made between the Rutherfords and Runyons in 1866. Appellee contends that the land under which it owns the coal lies up Cow Branch, or west of the Adron Runyon 50-acre patent where it crosses Cow Branch. Appellants contend that the disputed land is covered by the Runyon patent. The land and coal conveyed by the John Rutherford deeds of 1903, under which appellee claims, and of 1904 to Dixie Blackburn are covered by the William May patent, as appellee contends. The problem concerned the determination of whether there was a common line between the two patents, and if so, its location.

The Chancellor adjudged that the true line between the property of the parties is the same line as that referred to in Dixie

Blackburn's deed to surface rights from John Rutherford in 1904, and that appellants were estopped to deny the recitals in their deed that this was the division line. The line is described in the Rutherford deed as follows:

" * * * Beginning at the mouth of a drain on the lower side of the branch a short distance above Parlee Riddles orchard * * * thence up the ridge to a small chestnut oak near the May Gap, thence down the point with the center thereof to a beech and ironwood standing on the point thence a straight line to the branch to a planted stone, thence a straight line to a beech, thence up the center of the point to the top of the ridge to a chestnut oak thence down the center of the ridge to a chestnut oak and rock thence down the hill with the marked line between the said John Rutherford and O. P. Runyon to the cow branch, thence with the branch to the beginning. * * *"

There was testimony that the "chestnut oak" called for in the above deed of John Rutherford is the same as the "chestnut oak" called for in the deed for the mineral rights, executed in 1903, from John Rutherford to appellants' predecessor in title, W. J. Newingham and others. This deed calls N. 58° 30' E. 75.2 feet to a large chestnut oak on top of the spur and runs down this spur to Cow Branch, then down the branch about 660 feet to the beginning. This call running down the spur had long been recognized as the line between the Runyons and the Rutherfords. The evidence is persuasive that the marked line between the Rutherfords and Runyons is the line called for in the mineral deed. This line was recognized on September 15, 1910, in a deed from Fannie J. and Amos Runyon to Dixie Blackburn. The 1913 quitclaim deed from the Runyons to Dixie Blackburn again recognized this boundary line.

Appellants located the easterly lines of the Adron Runyon patent 600 feet or more up Cow Branch, about halfway from the mouth of the branch to the old agreed line, and sought to locate the patent several hundred feet to the south, based upon a statement in the deed from Runyon to Rutherford in 1848 that called for 12 acres. The evidence in support of their claim is inconclusive.

Appellee, on the other hand, fixed the location of the Adron Runyon survey by first locating an earlier James Madison patent issued in 1796. In the Adron Runyon survey, there are at least two calls below Cow Branch, and these calls locate the two upper calls of the Madison 1435-acre survey below Cow Branch. Reuben Rutherford, in his deed of February 3, 1866, placed a corner of the Madison survey opposite the mouth of Cow Branch. With this information, and knowing the location of Blackberry Fork, a tributary of Pond Creek, and the beech on the point, it was possible for appellee to locate the Madison lines.

Appellants, in addition to exhibits, introduced the testimony of a number of witnesses concerning the distances and bearings and the location of certain trees scattered over the hillside on both sides of Cow Branch. It is improbable that any one of these trees was marked as a corner tree in 1849. Appellants urge that two trees which they found halfway up Cow Branch be accepted as upper corners of the William May survey. They platted the William May survey on the map and contended that the Adron Runyon survey joined it at the corners they selected. The evidence is not convincing that they found either corner by which they could locate the first call of the William May survey.

■ Appellee, on the other hand, located the calls in the oldest patent available, the Madison survey, and worked westwardly up Cow Branch by locating the corners in the next oldest survey. This method of locating the younger survey in accordance with the lines of the older was approved in Bryant v. Terry, 189 Ky. 489, 225 S.W. 242; Swift Coal & Timber Co. v. Ison, 231 Ky. 404, 21 S.W.2d 659.

The Chancellor found the most reliable starting point to be the point in the Madison

line on the cliff across Pond Creek from the mouth of Cow Branch. The call of the Reuben Rutherford 200-acre patent S. 50° E. 98 poles down Cow Branch led to a corner of the William May patent. By surveying from this point down the branch S. 80° E. 68 poles to a double beech at the mouth of Cow Branch, there was a tie-in with the call from the cliff in the Madison survey; then, by running S. 75° W. 14 poles and crossing the main creek to two beeches in the hollow, the mouth of Cow Branch, the point where the Adron Runyon patent calls for a stone, was reached.

Should we accept appellants' theory that the last marked corner of the Reuben Rutherford survey of 1849 is on the Peg's Branch side of the ridge, and this line should conflict with the recognized natural object, the course in their deed must yield to the natural object. Staley v. Richmond, 236 Ky. 11, 32 S.W.2d 546; Fordson Coal Co. v. Napier, 261 Ky. 776, 88 S.W.2d 985; Lainhart v. Shepherd, Ky., 246 S.W.2d 460. We think that appellee's evidence is plain that this survey runs up Blackberry Fork, calls for a cliff and two beeches in a hollow, and that appellee's location of this survey plainly finds the natural objects designated. These are Blackberry Fork, the cliff, the mouth of the hollow, and the creek below the mouth of Cow Branch. Obviously, it was clear to these parties that Pond Creek was a well-described natural object and was recognized by them as the general reference point in fixing the dividing line.

The evidence was conflicting and voluminous. Many patents, deeds, maps, and plats were introduced as exhibits. Eight surveys were made. References in many of the title papers were to trees and stakes which long since have disappeared. The most reliable references in the patents and deeds were to various natural objects; namely, Pond Creek, Blackberry Fork, Cow Branch, and the ridges and spurs around Cow Branch, the bench in the head of Cow Branch, the large rock by a large chestnut oak on top of the spur which runs down to Cow Branch on the south side thereof, and the cliff opposite the mouth of Cow Branch across Pond Creek.

■ We think the Chancellor correctly determined the locations of the Runyon and May patents and found that the line agreed upon between Adron Runyon and Reuben Rutherford in 1849 is the same line as that referred to in the deed of 1866 and described in the mineral deed of 1903. This same line is described in the following deeds: the surface deed to Dixie Blackburn in 1904, the Dixie Blackburn deed of 1910, and Fannie Runyon's quitclaim deed of 1913.

■ Having fixed the location of the boundary line between the parties, the only question remaining to be decided is the ownership of the mineral rights under the land. It is undisputed that appellee obtained its title by mineral deed from John Rutherford in 1903, its predecessor, and by a connected chain of paper title from Rutherford to appellee. Appellants attack this title by claiming that John Rutherford had no title from William May, owner of the 1849 patent. Dixie Blackburn obtained her title to the surface from her grandfather, the same John Rutherford, in 1904; thus, she and appellee had a common source of title, John Rutherford, and she, therefore, is estopped to attack the title antedating the common source. May v. Chesapeake & O. Ry. Co., 184 Ky. 493, 212 S.W. 131; Coleman v. Republic Steel Corporation, Ky., 280 S.W.2d 171. Also, Dixie Blackburn was bound to hold the possession of the surface for the benefit of the owner of the coal under her grandfather's deed. Whatever she acquired by the Runyon deed in 1913, she held the coal and mining rights for the benefit of the appellee. KRS 381.-430; Piney Oil & Gas Co. v. Scott, 258 Ky. 51, 79 S.W.2d 394; Sellars v. Ohio Valley Trust Co., Inc., Ky., 248 S.W.2d 897.

■ The John Rutherford deed of 1903, under which appellee claimed contained no source of title. Appellants objected to the introduction in evidence of this deed because they contended it was not a recordable instrument. The failure to recite the source of title in a deed does not prevent the title to real estate from passing from the grantor to the grantee. KRS 382.110;

McPherson v. Gordon, Ky., 96 S.W. 791; Perkins v. J. M. Robinson, Norton & Co., Ky., 124 S.W. 310; ·Loeb v. Conley, 160 Ky. 91, 169 S.W. 575.

The findings of the Chancellor are amply supported by the proof and are free from prejudicial error.

The judgment is affirmed.