## Sears, et al. v. Collie, et al.

## Same v. Dabney, et al.

(Decided May 17, 1912.)

## Appeals from Trigg Circuit Court.

1. Guardian and Ward—Attorneys—Employment by Guardian—Lien for Fee.—A guardian has the power to employ an attorney to bring suit for the recovery of the ward's real estate, and the attorney is entitled to a lien on property recovered for a reasonable fee.

2. Infants—Action Against—Process—Action to Set Aside Judgment—Appearance—Judgment.—Though in an action against infants to enforce a lien on their real estate, they be not properly served with process, yet if they and their guardian file an action to set aside the judgment entered in such action, and the actions are consolidated and heard together, their appearance is entered, and being before the court, they are bound by any judgment thereafter rendered.

3. Depositions—Infants—Proof Upon Interrogatories—Section 574, Civil Code.—Where a deposition is to be read not only against infants, but against their guardian, who is a party to the proceeding, Section 574 of the Civil Code does not require such depositions to be taken upon interrogatories.

4. Judicial Sales—Purchase by Commissioner—Bona Fide Purchaser for Value.—Where the master commissioner, through the intervention of a third person, purchases the property sold by him, the sale is not void, but merely voidable, and will not be set aside where the property has passed into the hands of an innocent purchaser for value without notice.

5. Commissioner's Deed—Civil Code, Sections 397 and 399—Failure to Recite Names of Parties—Title.—A master commissioner's deed passes to the grantee the title of all the parties to the action and the title of the grantee is not affected by the failure of the deed to recite the names of the parties to the action, as the pro-

vision of Section 399 of the Civil Code, providing that this be done, is merely directory and not mandatory.

6. Champerty—Judicial Sale—Possession by Defendant.—Where defendants in an action have been divested of title by a judgment of a court of competent jurisdiction, their possession of the property thereafter is not adverse, and a deed made by the purchaser to a third party while they are in possession is not champertous.

OLIVER & OLIVER for appellants.

THOMAS P. COOK, JOHN W. KELLEY for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

These two appeals involve the same questions, and will be considered together. Eveline Cherry; by her last will and testament, which was probated by the Trigg County Court on July 9, 1883, devised to her nephew, Jefferson Davis Sears, for life, with remainder to his heirs, the upper half of a tract of 120 acres of land in Trigg County. The lower half she devised to her nephew, William Thomas Sears, for life, with remainder to his heirs. She directed that the land be appraised by disinterested parties, and if the lower half was not worth as much as the upper half, Jefferson Davis Sears was to pay to William Thomas Sears the amount of the difference as agreed upon by the appraisers.

The land was divided between the two devisees. Jefferson Davis Sears executed to his brother a note for $150, the difference in the value of the two tracts. This note was assigned to George W. Cobb, who, on April 2, 1886, filed suit in the Trigg Circuit Court for its collection.

On August 17, 1885, Jefferson Davis Sears borrowed from William Holland and the sum of $125, and he and his wife mortgaged his land to secure the payment of the debt. In 1886 Holland brought suit in the Trigg Circuit Court to enforce his mortgage lien.

In these two suits, judgments were rendered and the land was sold to one L. P. Holland at the price of $220. On April 28, 1887, L. P. Holland assigned his purchase to William Holland, and directed the Master Commissioner to make deed to the latter. On May 12, 1887, the land was conveyed by the Master Commissioner to William Holland.

On January 1, 1887, William Holland and wife sold

and conveyed the land to John T. Lampkin. Lampkin took possession of the land and occupied it until January 9, 1897. In the meantime, Jefferson Davis Sears had died, leaving a widow, Lydia Sears, and several infant children. Lydia Sears was appointed and qualified as guardian of these children. On January 9, 1897, she, as guardian, employed John C. Dabney and Fenton Sims to bring suit, on behalf of her wards, against Lampkin to recover the property. Pursuant to this employment suit was filed by them, and Lampkin made defense. The pleadings, which are voluminous, extended as far as the rejoinder. Pending the action, the guardian, without the knowledge or consent of the attorneys employed to represent the wards, compromised and settled the suit without the payment of any fee to Dabney and Sims for their services. The compromise agreement was entered of record as the judgment of the court. By the agreement, Lampkin turned over to plaintiffs in the action the sixty acres of land in controversy, and the rent due from Sam Crute for part of the land for that year. In the meantime, Lydia Sears had remarried a man by the name of McDonald, and the compromise agreement was signed by her as Lydia McDonald.

On January 1, 1899, Fenton Sims and John C. Dabney brought suit against Lydia McDonald, formerly Sears, guardian of Birdie Sears and Sarah Sears, infants over fourteen years of age, and Willie B., Janie, Mamie, Duncan and Lois Sears, infants under fourteen years of age, and against said infants individually, for the purpose of recovering a fee of $100 for their services in the suit against Lampkin, which they alleged to be reasonable, and to have the same adjudged a lien upon the tract of land in controversy in the action. Process was served upon the guardian and upon the infants, though it is claimed that it was not sufficient to bring the infants before the court. This question will be hereafter noticed. A guardian ad litem was appointed for the infants, who filed an answer on their behalf. On February 17, 1899, a default judgment was rendered, adjudging that a fee of $100 was reasonable compensation for their services, and that they were entitled to a lien on the land to secure the payment thereof, and directing that the land be sold. On April 10, 1899, twenty-nine acres of the land was sold by the commissioner for $138.60. Exceptions were filed to the report of sale. On

May 8, Lydia McDonald, formerly Sears, as guardian for her infant children, and the infant children individually, filed in the Trigg Circuit Court an action pursuant to section 518 of the Civil Code, to set aside the judgment rendered in favor of Sims and Dabney. To this action Sims and Dabney filed answer, and issue was joined. The two actions of Sims and Dabney against Lydia McDonald, Guardian, Etc., and of Lydia McDonald, Guardian, Etc., against Sims and Dabney, were consolidated, prepared and heard together. At the instance of the guardian and her children, the sale was set aside. The judgment was amended, reducing the fee allowed Sims and Dabney to $75. For this sum they were adjudged a lien on the land, and the Master Commissioner was directed to sell a sufficiency of the land to pay the debt, interest and costs. On May 13, fifty-five acres of the land were sold at the price of $130.98. O. B. Shoemaker became the purchaser. He transferred his bid to J. W. McKinney. On May 28, 1901, the report of sale was confirmed. On May 21, 1902, the Master Commissioner executed a deed to McKinney. On February 22, 1906, J. W. McKinney sold and conveyed the land to J. W. Kelley, the Master Commissioner. In 1908, Kelley mortgaged the land to John Howard. Thereafter, John Howard brought suit against John W. Kelley to enforce his mortgage lien. The land was sold, and W. D. Collie and Annie Fuqua became the purchasers, and were awarded a writ of possession for the land.

On August 13, 1909, Willie B. Sears, Sarah Oliver, and her husband, Eulis Oliver, Birdie Karnes and her husband, Willie Karnes, Mamie Turner and her husband, John Turner, Janie Sears, Duncan Sears and Lois Sears, the last two named being infants under the age of twenty-one, suing by their brother and next friend, Willie B. Sears, brought the first action named in the caption against appellees, W. D. Collie, Annie Fuqua and Lydia McDonald, to quiet their title to the land in controversy. Appellees denied appellants' title, and pleaded the proceedings set out above in bar of their recovery. Appellants replied, and pleaded that the proceedings in the case of Sims and Dabney against Lydia McDonald and others, were void for several reasons, which will be hereafter noticed. Upon final hearing, appellants' petition was dismissed, and from that judgment they appeal.

On August 20, 1909, appellants, Willie B. Sears and others, sued John C. Dabney, surviving partner of the firm of Sims & Dabney, Mrs. Siddie Sims, administratrix of Fenton Sims, deceased, Lydia McDonald, W. B. Collie, Annie Fuqua, J. W. Kelley and J. W. McKinney, to have the judgment in the action of Sims & Dabney against Lydia McDonald, Etc., rendered on February 19, 1901, and the sale of their land, set aside, and a new trial granted them, and asked that they be allowed to file an answer to the petition of Sims & Dabney, and defend in that .action. On September 6, 1909, appellants filed an amended petition. To the amended petition a demurrer was interposed and sustained. Appellants having declined to plead further, their petition was dismissed. From this judgment an appeal is prosecuted.

In addition to bringing the foregoing action to set aside the judgment and sale in the case of Sims & Dabney against Lydia McDonald and others, appellants, who were defendants in that action, appeared in that action and moved to set aside the judgment and order of sale as a clerical misprision. Judgment was entered, overruling their motion, and from this judgment they also appeal.

For appellants, it is first insisted that a guardian has no power to employ counsel to prosecute an action for his wards, and to bind their estate for the payment of a reasonable attorney's fee. Section 2030 of the Kentucky Statutes provides, in part, as follows:

"He (the guardian) shall also receive and sue for the debts and demands owing to the ward, defend actions against him, and, with leave of the court, may compound a debt or demand, or settle or compromise any controversy concerning the lands of his ward when the interest of the ward will be subserved thereby."

Thus it will be seen that the guardian is not only given the power, but it is his duty, to prosecute and defend actions on behalf of his ward. The power to prosecute and defend a suit fairly includes the power to make such reasonable contracts in regard thereto as may be necessary to conduct or defend the same, and includes the power to employ attorneys therein. Taylor v. Beamis, 110 U. S., 442; Shultheis v. Nash (Wash.), 67 Pacific, 707; In re Hynes, 105 N. Y., 560. In the early case of Chapline v. Moore, 7 Monroe, 150, the court said:

"It is the duty of executors, administrators or guar-

dians in suits necessary to be prosecuted or defended to draw to their aid the services of men learned in the profession of law, and for so doing, they should be allowed, in settling their accounts, such sums as are usually paid for like personal service by men ordinarily prudent in their own affairs, provided they have actually employed gentlemen of skill and ability, and have actually paid for their services.''

And in the recent case of Sanders v. Woodbury, Etc., 146 Ky., 153, it was held that the next friend of an infant could employ counsel to represent the infant, and agree on the compensation to be paid, subject, however, to the limitation that the fee agreed upon be reasonable, and that this was a question for the court. We, therefore, conclude that a guardian has the power to employ counsel to prosecute and defend actions for his ward, and to bind the estate of the ward for the payment of a reasonable attorney's fee. Any other rule would place infants at the mercy of the designing, for few attorneys would care to undertake an employment to represent infants, unless sufficiently assured of a reasonable compensation for their services.

By section 107, of the Kentucky Statutes, attorneys at law have a lien upon all claims or demands, including all claims for unliquidated damages, put into their hands for suit or collection, or upon which suit has been instituted, for the amount of any fee which may have been agreed upon by the parties, or in the absence of such agreement, for a reasonable fee for the services of such attorneys; and if the action is prosecuted to a recovery, shall have a lien upon the judgment for money or property which may be recovered, legal costs excepted, for such fee. It has been held that the lien given by the foregoing section applies to property as well as money. McIntosh v. Bach, 110 Ky., 701, 62 S. W., 515. It is insisted, however, that the statute does not apply in the case of claims or demands due infants. The statute contains no such exception. It applies in every case where there has been a valid contract of employment. As the guardian had the power to employ Sims & Dabney to sue Lampkin, for the recovery of his wards' estate, it follows that the attorneys so employed were entitled to a lien upon the land for a reasonable attorney's fee. For the purpose of asserting and enforcing this lien, they brought the action of Simms & Dabney v. Lydia

McDonald, Guardian, Etc. By default judgment, the court first fixed the fee at $100. Then, when the guardian and the infants sought to set the judgment aside by proceeding under section 518 of the Civil Code, the court, upon hearing proof, fixed the fee of the attorneys at $75, and ordered the land in controversy sold for the purpose of paying the fee. By subsection 2 of section 489 of the Civil Code, the vested estate of an infant in real property may be sold by order of a court of equity for the payment of his debt or liability in an action brought against him by his creditors. While the claim of the attorneys may not have been a personal debt of the infants, yet it was a claim for which their estate was liable, and, therefore, a liability. As the attorneys had a claim for a reasonable fee, and for the claim a lien upon the infants' real estate, it follows that the real estate could be sold for the purpose of discharging the lien. As the land was situated in Trigg County, and the action was pending in the Trigg Circuit Court, and the court, therefore, had jurisdiction of the subject matter, it follows that the judgment was in all respects valid if the court had jurisdiction of the infant defendants.

It is insisted, however, that the court did not have jurisdiction of the infant defendants, because the return of the sheriff and the process show that it was neither properly issued nor properly served. This phase of the case we deem it unnecessary to discuss. It is sufficient to say that when the guardian, on her own behalf and on behalf of the infants, and the infants themselves, brought an action pursuant to section 518 of the Civil Code, for the purpose of setting aside the default judgment theretofore entered in the case of Sims & Dabney v. Lydia McDonald, Guardian, Etc., and the two actions were then consolidated, the infant defendants necessarily entered their appearances to the proceeding, and were bound by the judgment thereafter rendered.

It is next insisted that the judgment in the case of Sims & Dabney v. Lydia McDonald, Guardian, Etc., is void because the proof upon which it was based was not taken on interrogatories, as required by section 574 of the Civil Code. By the provisions of that section, however, and the interpretation placed upon it by this court (Palmer v. Husbands, 134 Ky., 152), depositions are required to be taken upon interrogatories only where all the parties against whom the depositions is to be read have been constructively summoned and have not ap-

peared, or be defendants and under disability other than coverture, or infancy and coverture combined. It does not apply when one of the parties is an adult. In the case under consideration the guardian was also a party. Therefore, the judgment is not void because proof was not taken upon interrogatories.

Another contention of appellants is that the sale itself was void because John W. Kelley, the Master Commissioner, was the real purchaser, under a collusive agreement with Shoemaker and McKinney. The record shows that the property was knocked off to Shoemaker, who afterwards transferred his bid to McKinney. A deed to the property was made to McKinney by the Master Commissioner. McKinney and wife conveyed to Kelley by deed dated February 22, 1906. In this deed the consideration appears as follows:

"In consideration of the said John W. Kelley having paid for the party of the first part the sale bond and interest, amounting to the sum of $134.93, which sale bond was executed by O. B. Shoemaker, with H. R. Lawrence as surety, in the cause of Fenton Sims and John C. Dabney v. Lydia McDonald, Guardian, Etc."

Thus it will be seen, even if it be conceded that Kelley was in fact the real purchaser, that there is nothing in the record of the proceedings to apprise a subsequent purchaser of that fact. Nor is the above recital in the deed from McKinney and wife to Kelley sufficient to apprise a subsequent purchaser of such fact. The recital in the deed may be true, and yet Kelley may have subsequently purchased the property from McKinney. That being true, and it not appearing that appellees had any actual knowledge of the fact that John W. Kelley was the real purchaser, we conclude that they are innocent purchasers for value without notice. By section 1711, Kentucky Statutes, the title to property purchased by an officer or another to his use, which may be sold under an execution by him or his deputy, is not changed, and any deed or bill of sale for the property so sold is declared to be void. We have no such statute in regard to sales made by a Master Commissioner. True, the court, in the case of Price's Admr. v. Thompson, 84 Ky., 219, held that a sale by a Master Commissioner to himself was conclusively invalid, and in Penn v. Rhoades, 124 Ky., 798, in speaking of such a sale, the court used the word "void." In the case of Price's Admr. v. Thompson, the rights of no third party were involved. In

the case of Penn v. Rhoades, the purchaser acquired title with notice of the fact that the commissioner was the purchaser at his own sale. It is evident, therefore, that the court inadvertently used the word "void" instead of "voidable." The general rule, and that supported by the great weight of authority, is that while the person appointed to make a judicial sale of property cannot become a purchaser thereof at his own sale, either directly or through the intervention of another as a nominal purchaser, such a sale is not void, but merely voidable. Am. & Eng. Ency. of Law, Vol. 17, p. 964, and cases cited; 24 Cyc. 2930, cases cited; Freeman on Void Judicial Sales, p. 120, Sec. 33. Being voidable, the sale will be set aside on exceptions, or if attacked in time, while the property is in the hands of the commissioner, or in the hands of one with notice of that fact that he was the purchaser. Not being void, the sale cannot be collaterally attacked, nor can it be set aside when the property has passed into the hands of an innocent purchaser for value and without notice. As appellees bore that relation to the property in question, it follows that their rights can not be affected by the fact that the commissioner was the real purchaser. Penn v. Rhoades is disapproved of only to the extent that it uses the word "void" instead of "voidable."

But it is argued that the deed made by the commissioner to McKinney did not pass title because it failed to recite the names of the parties to the action.

Section 397, Civil Code, is as follows:

"A conveyance made in pursuance of a sale ordered by the court shall pass to the grantee the title of all the parties to the action or proceeding."

Section 399, Civil Code, also provides:

"It shall be necessary for the conveyance to be signed by the commissioner only, without affixing the names of the parties to whom title is conveyed; but the names of such parties shall be recited in the conveyance."

As section 397 provides that a conveyance made by the commissioner shall pass to the grantee the title of all the parties to the action or proceeding, and section 399 directs that the names of such parties shall be recited in the conveyance, it is manifest that the purpose of the latter provision was to have the deed show who were the parties to the action, so that the deed itself

would be complete evidence of title. In the absence, therefore, of such recital in the deed, the purchaser, or anyone claiming through him, could show from the record of the proceedings who were the parties to the action, and whose title passed by the conveyance. We, therefore, conclude that that part of section 399 with reference to the deed's reciting the names of the parties to the proceedings is directory and not mandatory, and that the title of all parties to the action passes under section 397, by virtue of the deed made by the commissioner, even though the names of the parties be not recited in the deed.

The deed from McKinney to Kelley was not champertous. Even if it be true that appellants still had possession of the land in controversy, they had, by a court of competent jurisdiction, been divested of all title. From that time their holding was amicable and not adverse. They were there by the sufferance of the purchaser, who could have removed them at any time. That being true, they can not avail themselves of the plea of champerty. Snowden v. McKinney, 7 B. Mon., 258; Bartley, et al. v. Redmon, &c., 115 S. W., 831; Behrens v. Crawford, et al., 108 S. W., 288; Cryer v. McGuire, 148 Ky., 100.

Other questions are raised, but we deem it unnecessary to discuss them. It is sufficient to say that in neither of the actions have appellants shown themselves entitled to the relief prayed for.

The judgment in each action is affirmed.