## Green et al. v. Hammons.

(Decided December 10, 1929.)

WM. LEWIS & SON for appellants.

W. E. BEGLEY and GEORGE G. BROCK for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

On October 16, 1918, John Green by deed with
general warranty in consideration of $1,500, "$700.00 in
hand paid" and four notes of $200 each, due in one, two,
three, and four years, conveyed to Fred Hammons a
tract of land in Laurel county, the description of which
concludes with these words, "supposed to be 100 acres."
By the direction of Green, Hammons executed the four
notes to Green's niece, Effie Green. She sold the notes
to a bank before maturity and the bank collected them.
Hammons in this action alleged that John and Effie
Green fraudulently represented to him that the farm
contained 100 acres; that he relied upon this representa-
tion and so purchased the farm, when in fact there was
only 63 4/5 acres in the tract. He sought a recovery
against them for the deficit of $15 an acre. The allega-
tions of the pleading were denied, proof was taken, and
on final hearing the circuit court adjudged Hammons the
relief sought. The Greens appeal.

The rules governing cases of this sort were thus laid
down by the court in Harrison v. Talbot, 2 Dana, 266:

"Sales in gross may be subdivided into various
subordinate classifications: First—Sales strictly
and essentially by the tract, without reference, in
the negotiation or in the consideration, to any esti-
mated or designated quantity of acres. Second—
Sales of the like kind, in which, though a supposed
quantity by estimation is mentioned or referred to
in the contract, the reference was made only for the
purpose of description, and under such circum-
stances, or in such a manner as to show that the
parties intended to risk the contingency of quantity,
whatever it might be, or how-much-soever it might
exceed, or fall short of, that which was mentioned
in the contract. Third—Sales in which it is evident,
from extraneous circumstances of locality, value,
price, time, and the conduct and conversations of the
parties, that they did not contemplate, or intend to
risk more than the usual rates of excess or deficit in
similar cases, or than such as might be reasonably
calculated on as within the range of ordinary contin-
gency. Fourth—Sales which, though technically

deemed and denominated sales in gross, are, in fact, sales by the acre, and so understood by the parties.

"Contracts belonging to either of the two first mentioned classes, whether executed or executory, should not be modified by the chancellor when there has been no fraud. Such was the contract in the case of Brown v. Parish, lately decided by this court. —Ante (2 Dana) 6.

"But in sales of either of the latter kinds, an unreasonable surplus, or deficit, may entitle the injured party to equitable relief, unless he has, by his conduct, waived or forfeited his equity."

These rules have been followed and approved by the court in many subsequent cases. The proof by Hammons is that Green went over the land with him and showed him the lines, some months before the deed was written. When they came to close the trade, Hammons asked that the land be surveyed so that they would know accurately how much land was in the tract. Green answered that he had just had it surveyed; that it would vary but little from a hundred acres either way and the difference would not pay the cost of the survey. Green testifies that he said that he was selling the land by the boundary and not by the acre; that the tract was worth more than $1,500; that if Hammons was not willing to take it for $1,500 without a survey he need not buy it. But Hammons' version of the conversation is sustained by the numerical weight of the testimony, which was followed by the chancellor, and under the well-settled rule of this court the chancellor's finding on facts will not be disturbed when the mind is left in doubt as to the truth. Under the testimony for Hammons, very clearly the case falls within rule 3, and in many cases it has been held that a deficiency of 10 per cent. is an unreasonable deficit, entitling the vendee to relief. Fannin v. Bellomy, 5 Bush, 665; Paisley v. Hatter, 143 Ky. 635, 137 S. W. 250; Page v. Hogan, 150 Ky. 726, 150 S. W. 801, and cases cited.

The survey of the land upon which the circuit court rested its judgment did not follow on one side of the tract the lines which Green had showed Hammons. The surveyor ran to establish corners, then he ran the course of the deed finding no corner, and then closed the survey by running from this point to another established cor-

ner; although the lines, as so run, were considerably shorter than the call of the deed. In so running the line he left out entirely what is known in the record as the chestnut corner. The chestnut tree had been cut down, but its location is proved. It is established as a corner. The stump had rotted out, but some 20 years before a surveyor had marked a dogwood standing near by as the corner. This dogwood was found cut down also. The survey should be closed by running from the two established corners to this chestnut corner. The court is unable now to say how much the deficiency will be if the line is thus run. On the return of the case to the circuit court, a survey will be ordered to be made as above indicated, and the court will determine how much the deficiency is and give judgment therefor.

One reason the surveyor ran the line as he did was that apparently to run the lines as above indicated would be to run them within land inclosed by a neighbor. But John Green had recovered judgment against this neighbor, establishing the line claimed by him. The possession of the neighbor was therefore not adverse to John Green and Green's deed was not to this extent champertous. Sears v. Collie, 148 Ky. 453, 146 S. W. 1117, and cases cited. As Hammons has accepted a general warranty deed from Green, he can only recover of Green as to this land after he has been evicted by the judgment of a court. Grant v. McArthur's Ex'rs, 153 Ky. 356, 155 S. W. 732.

As to Effie Green it is earnestly insisted that she is not liable and that no judgment should have been entered against her. But to the extent of the deficit in the land the notes executed to her were without consideration. If she had kept these notes and had sought to collect them, the notes would not have been enforceable in her hands; or if Hammons had paid the notes without knowledge of the deficiency, he might have recovered the money so paid, as paid without consideration. She was present when the deed was drawn and when the conversation above referred to took place in regard to the number of acres in the tract. She is not shown to be a bona fide purchaser. The notes were simply made payable to her by John Green's direction as a matter of convenience, so far as appears. When she sold the notes to the bank and obtained the money from the bank, she put it in the

power of the bank, as a bona fide holder, to force Hammons to pay the notes, and she stands now in no better position than if she had collected the notes from Hammons herself; for by selling the notes to the bank she put it out of Hammons' power to plead the want of consideration and made this defense unavailable to him in this action, when sued by the bank. She is therefore equally responsible with John Green to Hammons, to the extent of the deficiency in the land, as the notes were to this extent without consideration.

The judgment is reversed, with directions to the lower court to ascertain the true amount of the deficit, as above indicated.