## Hammonds v. Jones et al.

(Decided Dec. 9, 1938.)

WILLIAM LEWIS & SON for appellant.

SYLVESTER V. LITTLE and WILLIAM A. HAMM for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

Appellant, Fred Hammonds, filed this action in ejectment to recover a parcel of land of approximately twelve acres from the appellees, John F. Jones and Layton Cassady, each of whom claims to be the owner of a portion of the land in controversy.

The disputed land is very nearly in the shape of a parallelogram and is claimed by appellant to be the extreme southeastern portion of a tract of land conveyed to Elizabeth Green by Jarvis Jackson in the year 1881, the description of the land in that deed being:

"* * * beginning on the bank of Rocky Branch at a white oak, gum and maple Green's corner; thence N. 85 E. with the meanders of said branch 27 poles to a white oak and two maples; thence S 5 E 90 poles to a large chestnut on a ridge; thence S 55 W 130 poles to a black oak and chestnut; thence N 38 W 305 poles to a hickory and gum on a ridge; thence N 70 E 132 poles to a pine Goins' corner; thence with his line East 35 poles to a white oak; thence S 10 E 24 poles to a maple; thence S 45 E 136 poles to the beginning, containing by survey 287 acres 3 rods."

Elizabeth Green, in the year 1899, conveyed to John Green a portion of the land deeded to her, as above,

which was on the south side of Craig's Creek, running through the land, described as follows:

> "* * * beginning on a white oak, gum and maple on the bank of Rocky Branch, N 85 E 27 poles to white oak and maple; thence S 5 E 90 poles to a chestnut *stump in C. M. Wyrick's field,* S 52 W 130 poles to a black oak and chestnut, N 36 W *71* poles to a cherry and white oak standing on the bank of Craig's Creek; thence up said creek with its meanders 69 poles to a stake; thence N 36 W 102 poles to a white oak sapling; N 65 E 9 poles to a stone; N 36 W 100 poles to a stone and two hickory pointers, N 70 E 43 poles to a pine; E 35 poles to two white oaks standing on Sandy Branch; S 10 E 24 poles to a sarvis the only call being a maple; S 45 E 136 poles to the beginning." (Italics ours.)

John Green, in the year 1918, conveyed to the appellant, Fred Hammonds, a portion of the land deeded to him by Elizabeth Green, which portion was described as follows:

> "* * * beginning on a stone at ford of creek where Lily Road crosses Craig's Creek; thence with Lily Road to corner of Orchard at Rogers Road; thence with Rogers Road to 3 small poplars; thence an East course to Orchard fence; thence with said fence to Lily Road; thence with said road to a stone near T. P. Witt's; thence with the original line a southeast course to a chestnut stump; thence S 55 W 130 poles to chestnut and black oak; thence N 36 W *84* poles to a cherry and white oak standing on west bank of Craig's Creek; thence with said creek to the beginning, supposed to be 100 acres." (Italics ours.)

It will be observed that the calls on the south of the land in the deed from Elizabeth Green to John Green are almost the same calls as in the deed from Jarvis Jackson to Elizabeth Green, but the "large chestnut on a ridge," at the end of the call S 5 E 90 poles, in Elizabeth Green's deed, is referred to in John Green's deed as a "chestnut stump in C. M. Wyrick's field," and there is a slight variation in some of the courses. In the deed from John Green to Fred Hammonds this was referred to merely as a "chestnut stump."

The calls in Fred Hammonds' deed are almost the

same as those in the John Green deed, but it will be observed that the call N 36 W 71 poles to a cherry and white oak standing on the bank of Craig's Creek, appearing in John Green's deed, reads N 36 W 84 poles, in Hammonds' deed.

The decision of this controversy hinges on the proper location of the chestnut at the end of the call S 5 E 90 poles in John Green's deed, which call in Hammonds' deed is "thence with the original line a southeast course to a chestnut stump," and on the proper location of the black oak and chestnut at the end of the call S 55 W 130 poles in the Elizabeth Green deed and in the Hammonds deed.

A great mass of testimony was taken as to the correct location of these natural objects and there was great conflict in this testimony. If these natural objects were located at the points claimed by appellant, and he introduced strong evidence to show that they are located at the points claimed by him, appellant is the owner of the land in dispute.

Taking this testimony introduced in behalf of appellant as an independent proposition, disconnected with the remainder of the survey, we would rather be inclined to the opinion that the weight of the evidence shows the location of the black oak and chestnut corner to be where claimed by appellant. As to the proper location of the chestnut at the end of the call S 5 E 90 poles, we would rather be inclined to the view that the weight of the evidence favors the appellee. These two findings of fact would place us in a very inconsistent position, because, if the chestnut at the end of the call, S 5 E 90 poles, is at the point claimed by appellees, it is well-nigh impossible that the black oak and chestnut could be at the location claimed by appellant.

It will be observed that we state that we would be inclined to find the location of the black oak and chestnut corner to be at the point claimed by appellant, if considered as an independent proposition, but when taken in connection with the other calls of the survey, we do not believe this finding of fact is justified and feel that we are considering another one of those situations exemplifying the uncertainty and unreliability of human testimony. To find that the black oak and chestnut corner is located at the point claimed by appellant largely disrupts the other calls of the survey, making it neces-

sary to effect large changes in a number of the courses and distances to make the survey come anywhere near to closing. We realize that it is the rule that where natural objects are definitely established, such locations control over courses and distances, but we are also of the opinion that the disruption of a large number of courses and distances in the survey by the location of a natural object at a point claimed may also be taken into consideration in determining whether or not the location of the natural object has been definitely and satisfactorily established.

If the location of the black oak and chestnut corner is at the point claimed by appellant, it is an evident fact that the location of the chestnut at the end of the call S 5 E 90 must also be at approximately the point claimed by him or the whole survey would be entirely disrupted. But, as we have indicated above, we believe the weight of the evidence shows that this chestnut was located at the point claimed by appellees. In the first place, the calls to this chestnut in the earlier deeds, called to a chestnut "on the ridge." We realize that the words, "on the ridge," do not necessarily mean that this chestnut must have been at the exact break of the ridge but certainly a surveyor, looking for the chestnut, would expect to find it reasonably close to the top of the ridge, or at least somewhere on the ridge, yet if it is located where appellant claims, this would not be the case, for it appears to be pretty well established in evidence that the location claimed for it by appellant is down the side of the ridge and in a hollow.

But aside from all this mass of conflicting testimony as to the location of these natural objects, the three surveyors in this case all state that in their judgment these natural objects, when in existence, were located approximately at the points claimed by appellees. J. M. Culton, who, from his testimony and map, appears to be a surveyor of more than ordinary ability, makes this statement, "Frankly speaking, I don't think the disputed boundary ever contained any of the land in the Jarvis Jackson deed to Elizabeth Green." This surveyor was called as a witness for the appellant after appellant was dissatisfied with the surveys of the two other surveyors who testified in the case.

If the surveyor, Culton, is correct in his statement that the disputed land was never contained in the de-

scription in the deed from Jarvis Jackson to Elizabeth Green, then it is impossible for these natural objects, the chestnut corner and the black oak and chestnut corner, in these calls to be at the points claimed by appellant, for these natural objects are the ends of the calls in the Jarvis Jackson deed.

We have given careful consideration to all the testimony tending to establish the location of these corners and have come to the same conclusion as that arrived at by the chancellor, namely, that the correct location thereof is not at the points claimed by appellant, but at approximately the locations claimed by appellees. This being the case, appellant must fail in his claim unless something else that has transpired prevents appellees from claiming the land up to the line, as we have located it, running from the black oak and chestnut corner N 59 E 130 poles to the chestnut corner. Appellees' deeds describe their land as running with the lines of John Green (now Fred Hammonds) and they are entitled to claim to this line which we find the evidence to establish as above, thereby giving them ownership of the disputed land, unless something has transpired to prevent them from claiming to this line. Appellant insists that things have transpired which gave appellant the right to this land and prevent appellees from claiming to the line indicated as being the correct southeast line of the Jarvis Jackson survey, this contention being based on two lawsuits, the pleadings and judgments of which were introduced in evidence by appellant, his claim being that these lawsuits operated as res judicata in his favor as to appellees' claim to this land.

Both the appellees derive their title from one T. P. Witt. Some time in the year 1907, and prior thereto, John Green and T. P. Witt were in a dispute as to the boundary between their lands and probably John Green was then claiming the land now in controversy in this action. John Green filed suit against T. P. Witt as a result of the controversy between them and alleged that he was the owner of a tract of land which is bounded and described exactly the same as the description above in the deed from Jarvis Jackson to Elizabeth Green, except that the description in the petition refers to the call of N 70 E 132 poles as being N 70 E 124 poles. This difference in distance was evidently a typographical error and, at any rate, did not operate to enlarge John Green's claim.

T. P. Witt was duly summoned in this action and permitted default judgment to go against him. Default judgment was rendered against Witt in which it was adjudged that John Green recover of him the tract of land described in the petition. If this judgment operated to adjudge John Green the owner of the land in controversy in the present action, appellees would be bound by this judgment because Witt was their predecessor in title and they claim by, through and under him, to the line between him and John Green.

However, it will be observed that the judgment in this action determined and adjudged nothing whatsoever as to the land in controversy. It only adjudged that John Green was the owner of the land which had been conveyed by Jarvis Jackson to Elizabeth Green, as above described, and we have heretofore indicated that, in our opinion, this land did not include any of the land in controversy in the present action. We surmise that John Green was at the time of this action probably claiming the land in controversy, or a portion thereof, and that by the action he was intending to litigate with Witt the ownership of the land now in controversy, but he did not do so. His proper procedure would have been to do as appellant has done in this case, namely, to survey the disputed strip of land and describe it in his petition by this survey, or by some adequate description, and ask for a recovery thereof against Witt. However, in the form he had his action, Witt was justified in making no defense as Green by his petition was only claiming title to the Jarvis Jackson land, which he undoubtedly had, and which Witt did not claim. This judgment therefore only bound Witt and his successors in title to the extent that John Green was the owner of the land deeded by Jarvis Jackson to Elizabeth Green, although, as a matter of fact, he was not the owner of all of said land but only the owner of the southern portion thereof which Elizabeth Green had conveyed to him by the deed above mentioned. There is nothing in this lawsuit or judgment therefore that prevents appellees from claiming to the correct line of the Jarvis Jackson tract. Nor is appellant's situation improved to any extent by the fact that the sheriff of the county, after rendition of the judgment in favor of Green against Witt, went on the land in controversy in the present action and attempted to put Green in possession thereof by staking it off. There was nothing in the judgment au-

thorizing the sheriff to stake beyond the correct line of the Jarvis Jackson land and the fact that he did so would not operate to extend the claim of John Green under his deed beyond the boundary thereof, as contained in his deed.

The rule is that where one is in possession of land, claiming title by deed, his possession will be in accordance with the boundary stated in his deed and possession cannot be extended beyond the boundaries of a deed by marking a line beyond the boundary thereof. Kentucky Union Co. v. Gilliam et al., 235 Ky. 316, 31 S. W. (2d) 388; Patton v. Stewart, 173 Ky. 220, 190 S. W. 1062; Strunk et al. v. Geary, 217 Ky. 113, 288 S. W. 1053; Stephenson Lumber Co. v. Hurst, 259 Ky. 747, 83 S. W. (2d) 48.

There was nothing therefore in this lawsuit between Green and Witt to extend the possession of Green beyond his true deeded boundary nor did the action of the sheriff in staking this line serve to extend the extent of his possession or operate to extend his correct boundary line.

The other lawsuit relied on by appellant as being res judicata in his favor as to this disputed land was an action between John Green and Fred Hammonds to which neither of the appellees nor T. P. Witt, their predecessor in title, was a party. In this action Hammonds sued Green for a deficiency in land conveyed to him which has been described above. The deed described the land as containing 100 acres. Green had it surveyed and ascertained that it contained approximately 62 acres and the lawsuit followed. Hammonds was given judgment in the lower court for the difference between the 62 acres the land contained according to the survey and the 100 acres called for in the deed. On appeal to this court the recovery was affirmed generally but the action was referred back to the lower court to ascertain the correct amount of the deficiency. In the opinion of this court, reported in Green v. Hammons, 232 Ky. 59, 22 S. W. (2d) 422, the court assumed that the black oak and chestnut corner, mentioned above, had been established by John Green as being at the point contended by him which is now the point contended for by appellant in the present action, and therefore that Green had good title to the land now in dispute which should be included, thus decreasing the

amount of deficiency for which Green was liable to Hammonds. The court in that opinion used this language [page 424]:

> "One reason the surveyor ran the line as he did was that apparently to run the lines as above indicated would be to run them within land inclosed by a neighbor. *But John Green had recovered judgment against this neighbor, establishing the line claimed by him.* The possession of the neighbor was therefore not adverse to John Green and Green's deed was not to this extent champertous. Sears v. Collie, 148 Ky. [444], 453, 146 S. W. 1117, and cases cited. As Hammons has accepted a general warranty deed from Green, he can only recover of Green as to this land after he has been evicted by the judgment of a court." (Italics ours.)

If the judgment in that case, and especially the language used by this court in that opinion, were binding on appellees, or Witt, that is, if they had been, and were necessary parties to that action, appellant's title to the land in controversy would be res judicata as to them.

We do not wonder that appellant was led to believe by the opinion in that case that he was the owner of this land as the effect of that opinion is so to adjudge, but appellees are not bound thereby. That case was evidently not as carefully prepared and as vigorously fought as has been the case for both parties here. Neither was the main issue in that case the same as the issue here. The main issue in the present case was merely a collateral issue in that action. In any event, we have come to a different conclusion on the proof introduced in this action from that arrived at by this court on the proof introduced in the Green v. Hammons Case.

It is apparent that there is nothing in either of the two judgments introduced in evidence as res judicata by appellant that operates to give title to this disputed land to appellant as against appellees. Appellant then must fall back on, and rely on, his record title to establish his claim to the land in dispute, and, as we have found that his deeded line does not include the disputed land, it follows that he must fail in his action as he can rely only on the strength of his own title.

Wherefore, the judgment is affirmed.