**EALAND–WOOD LUMBER CO. et al. v.
BRONSON–MORGAN et al.**

No. 9994.

Court of Civil Appeals of Texas. Austin.
Dec. 19, 1951.

Motion for Rehearing Overruled
Jan. 23, 1952.

P. D. Renfro and Cecil, Keith & Mehaffy, all of Beaumont (John P. Blair, Beaumont, of counsel), for appellants. Blair & Randle and M. B. Blair, all of Austin, of counsel, on appellants' motion for permission to file motion for rehearing.

Andrews, Kurth, Campbell & Bradley, Raymond A. Cook, James R. Connor, all of Houston, Lewis Lanier, Jasper, for appellees.

ARCHER, Chief Justice.

Bronson-Morgan, et al., doing business as the Jasper County Lumber Company, Ltd., and Kurth Lumber Company, as plaintiffs, brought this suit against Ealand-Wood Lumber Company, M. T. Walters and various other defendants in trespass

to try title to certain lands on the Angelina River in Jasper County.

The defendants filed cross-action and disclaimed any land north of a line hereinafter referred to for convenience as "The Hickory Tree Line." The plaintiffs disclaimed as to any land south of a line hereinafter referred to as the "Indian Creek Line."

By agreement, the cause of action against Ealand-Wood Lumber Company was severed from the main suit.

The cause was submitted to the jury on three special issues, two of which requested answers concerning the location of plaintiffs' south boundary line and the other requested an answer to the plaintiffs' claim of ten year statute of limitation, Vernon's Ann.Civ.St. art. 5510. The jury found all three issues against the plaintiffs and in favor of the defendants. On motion made by the plaintiffs the court granted judgment non obstante veredicto, and this appeal is from that judgment.

The appeal is before this court on two assignments of error: the first is that the court erred in rendering judgment *non obstante veredicto,* and the second is that the court erred in refusing to enter judgment on the verdict, and since both points are related they were argued under one statement by the appellants. The appellees assigned four counterpoints:

"Counterpoint One. The original calls in the M. B. Lewis Survey for the unique meanders of the Angelina River and two crossings of Indian Creek were identified on the ground by the judicial admissions of defendants and by the undisputed testimony of both surveyors: and as natural monuments must control the boundary location as a matter of law.

"Counterpoint Two. The southeast corner of the M. B. Lewis Survey was established as a matter of law and must define the south line according to the patent.

"Counterpoint Three. The M. B. Lewis south line, being a common line (for a portion of its distance) with the William Jordan north line, must be located where the Jordan north line is fixed as a matter of law.

"Counterpoint Four. There was no evidence sufficient to raise a jury issue controverting the established south line of the M. B. Lewis Survey."

One cross-assignment of error: That the trial court erred in excluding from evidence the recorded field notes of McDonald, a County Surveyor.

This suit, while brought as a trespass to try title, is a boundary line dispute and involves the location of the north line of the Wm. Jordan one-half league and the south line of the Martin B. Lewis one-half league.

The question for our decision is whether the evidence, which we will summarize later in this opinion, raised a genuine fact issue as to the location of the south line of the M. B. Lewis survey, or on the other hand, does the original field notes and patent fix and demand as a matter of law that the Lewis south line be left where it was placed by McFarland in his survey of 1835, as contended for by plaintiffs.

We recognize that in cases of this character all reasonable intendments from the testimony must be resolved in favor of the jury's finding if reasonably supported by the evidence, and we indulge these intendments in this case.

The trial court, after hearing the evidence, seeing the maps and plats, and after the case had been fully developed, submitted to the jury on the issues, the jury's verdict received, concluded that there was no fact issue, but that the south line of the Lewis survey was located according to the field notes in the patent as a matter of law, and rendered judgment for appellee.

For convenience in getting a clearer understanding of the field note calls in the several surveys in the area about which testimony was had, we insert herein Plaintiffs' Exhibit No. 1, a portion of the official current map of the General Land Office.

PLATE I

The survey for William Jordan was made on November 1, 1834, and begins on the east bank of the Angelina River with bearings noted. There is no dispute as to this corner.

Thence S. 89° 40′ E. 3854 vrs to second corner on western boundary of an old survey known as the David C. McQuenn (with bearings noted);

Thence north 0° 20′ E. with the E. line 694 vrs to third corner, being the N.W. corner of said old survey (bearings noted);

Thence N. 89° 44′ W. 319 vrs, fourth corner (bearings noted);

Thence N. 0° 20′ E. 2936 vrs, fifth corner (bearings noted);

Thence N. 89° 40′ W. 3900 vrs, sixth corner, on east bank of the Angelina (bearings noted)—having crossed in the course of this line at the distance of 1025 vrs Indian Creek C.N.W. 2980 vrs again C.S.W.;

Thence down the meandering of the River Angelina noted—at the beginning corner.

The Martin B. Lewis begins—on the east bank of Angelina River, at Huling lower corner.

1st corner mound and post from which an oak 40 in. diam. bears N. 13 E. 10 vrs dist. and a magnolia 18 in. diam. bears N. 42 W. 7-2/10 vrs.

Thence down Angelina with its meanders S. 10° 1100 vrs S. 80° E. 750 vrs S. 1360 vrs S. 10° E. 350 vrs post and 2nd corner, a hickory 10 in. diam. for a stake from which a red oak 20 in. diam. N. 68° W. 6-8/10 vrs dist. and a cow oak 12 in. diam. bears S. 3° E. 12 vrs dist.;

Thence east 940, Indian Creek, C.S.W., 2740 Indian Creek C. West, 4740, third corner (bearings noted);

Thence N. 9° 20′ E. on Col. Lewis west boundary 3493 to fourth corner, (bearings noted);

Thence N. 80° W. 230—5th corner (bearings noted);

Thence N. 65° W. 1850—6th corner (bearings noted);

Thence South 1410—7th corner (bearings noted);

Thence W. 3840 to the beginning.

We have not set out the field notes in full in either of the surveys but have noted the courses, calls for location of other surveys for the river and the creek. '

It is seen that the calls fit the surveys as located on the map with such tolerance as is granted in such surveys. The Jordan's southwest corner is not in dispute, nor are the second, third, fourth and fifth corners. The conflict of opinions between the parties and the surveyors is as to the location of the north line of the Jordan.

The testimony is long and consists of surveyors' construction of the southwest corner of the Thos. B. Huling survey, its south line; and the lines of the Martin B. Lewis, together with the exterior surveys of the original grants as well as surveys of the interior smaller tracts. There were other witnesses as to location of corners, trees and lakes, all taken together is too long to attempt a discussion, but we shall make such observations as we believe will make more understandable the respective theories of the parties as to the proper location of the lines materially affecting the subject matter of this litigation in our decision in this case.

There are requests for admissions of fact by the plaintiffs in two series, and one series of requests by the defendants, together with the replies and answers to such requests.

There were a number of exhibits offered by the respective sides, including maps or plats of the general area, and of specific surveys and small tracts as well as corners, locations, trees and lines, and we shall insert herein some of these maps or plats, towit: (a) map accompanying the survey of the Lewis and designated Plaintiff's Exhibit No. 2.

PLATE II

This plat filed by the surveyor in the same instrument and as a part of the field notes, depicts the stairstep configuration of the Angelina River and the single straight south line crossing Indian Creek twice, and at the end of the distance call of 4740, third corner, bearing trees are set out with courses and distances, which are similar to bearing calls in the survey of the Samuel S. Lewis survey at one of its corners.

Defendant's Exhibit No. 15 showing the position and shape of the M. B. Lewis Survey as established by the original field notes and as found by the trial court is hatched in green. The location and shape of the M. B. Lewis survey according to defendants is hatched in red. The land in litigation (with small disclaimers) is thus the portion hatched in green but not in red. This was defined by defendants as a portion of the "North half" of the William Jordan

survey. This plat (without the hatching) was offered in evidence by the defendants themselves; and attention is called to their demonstration of the "stairstep" meanders of the Angelina River and the location of Indian Creek.

PLATE III

Plaintiffs' Exhibit 39, Defendants' Exhibit 27, was prepared by defendants' surveyor Stonecipher and is made to show the defendants' theory of the case, and reveals that the north line of the Jordan is common with the south line of the Lewis for the length of the Jordan and that the Lewis survey forms a common line with a portion of the east line of the Jordan. The surveyor conceded that the north line of the Jordan called for in the patent was the "Indian Creek" line.

The call for the two Indian Creek crossings are contained in both the Lewis and the Jordan field notes.

There has been no contention that the Lewis and Jordan do not adjoin, but defendants contend that the Jordan has a northward extension.

Mr. Stonecipher testified extensively concerning the work he did in attempting to locate the Huling survey, but as the appellants state in their reply brief "The only material issue in this appeal is the location of the original south boundary line of the M. B. Lewis Survey." We accept this as the issue to be determined, bearing in mind the jury verdict, and to ascertain if there is any evidence to support the jury's verdict

MARTIN B LEWIS

WILLIAM JORDAN

S. S. LEWIS

TOWN OF BEVILPORT

RETRACEMENT OF TRACT OF LAND
SHOWN AS
THE NORTH ONE HALF
OF THE
WILLIAM JORDAN ONE HALF LEAGUE
JASPER COUNTY, TEXAS     SCALE 1 IN = 100 VRS = 300 FT

PLATE IV

as it is our duty to indulge all reasonable intendments from the testimony in favor of the findings; and/or on the other hand, to decide if the original field notes and patent still demand as a matter of law that the south line of the M. B. Lewis survey be left where it was placed by the original surveyor in 1835 and affirmed by the trial court.

We do not believe that the trial court was in error in entering the judgment non obstante veredicto and in refusing to enter a judgment on the verdict.

We believe that as a matter of law that the original calls in the M. B. Lewis Survey, together with the plat filed by the surveyor, showing the meanders of the Angelina River and the calls for the two crossings of Indian Creek in the call on the M. B. Lewis south line a distance of 4740—third corner—post—from which a blk. oak 12 in. diam. bears S. 45° 30′ W. 1-8/10 varas dist., also a pine 11 in. diam. bears S. 59° 30′ E. 1-8/10 varas dist. fix the location of the south line and its southeast corner.

In one of the calls of the field notes of the Col. Samuel S. Lewis survey, it reads: "Thence S. * * * 3493 vs. 5th corner, a stake from which a bl. oak 12 in. di. bears S. 45 deg. 30′ W. 1-8/10 varas dist. and a pine 11 in. di. bears S. 57 deg. 30′ E. 1-8/10 vs." This is the recognized southeast corner of the M. B. Lewis survey and an inner corner of the Samuel S. Lewis survey.

These calls in these surveys have for bearings similar trees, courses and distances; then the subsequent call in the M. B. Lewis is: "Thence N. 9 deg. 20′ E. on Col. Lewis west boundary 3493—to 4th corner * * *."

The survey for Col. Lewis was made on September 3, 1835, and certified as having been made on August 31, 1835. The M. B. Lewis survey was made on the 3rd of September, 1835.

If we are to accept the construction placed on the location of the north line of the Jordan and the south line of the Lewis surveys by appellants, we must move the Jordan survey N. 0° 20′ E. 1921 vrs., instead of its sixth call of N. 89° 40′ W. 3900 vrs., sixth corner, the river, and ignore the calls for Indian Creek crossing and then give it a course of 89° 40′ W. 4247 vrs. to the river for its north line.

The calls in the survey for N. B. Lewis must be changed so that instead of calls of

"Thence E. 4740—3rd corner—post * *.

"Thence N. 9 deg. 20′ E. on Col. Lewis west boundary 3493—to 4th corner * *." to read

Thence S. 89° 40′ E. 4247 vrs. etc.

Thence S. 0° 20′ W. 1921 vrs. to corner, etc.

If this construction is to prevail, the original shape of the M. B. Lewis as shown on the map with the field notes is completely changed and the size and shape of the Jordan will be altered.

The process of construction of boundary suits is the determination of the intention of the parties as expressed in the conveyance under consideration.

In 7 Tex.Jur. 124, there is the following: "When there is an actual survey and the field notes are expressed in the grant, it is conclusively presumed that the grantor intended to convey the land embraced in the survey. Indeed it was observed in a leading case that the identification of the actual survey, as made by the surveyor, is the desideratum of all the rules; the footsteps of the surveyor must be followed, and the various rules are found to afford the best and most unerring guides to enable one to do so."

Our courts have distinguished between and among the comparative dignities of the several kinds of monuments and calls.

In 7 Tex.Jur. 159, there is found the following rule: "Comparative Dignity. It frequently occurs that when the description of the boundaries of a grant, consistent upon their face, are attempted to be applied upon the ground inconsistencies in the calls develop. In such cases controlling effect is always given to the boundary call which will give effect to and carry out the intention of the parties, and the call inconsistent with and which will defeat that intention is rejected as false. In the application of the rule, controlling effect is generally given

to the calls regarded as the most reliable, most material and certain, and therefore of higher dignity and importance, for they are supposed to be most prominent in the mind of the grantor. And so calls are ordinarily given priority in the following order: first, calls for natural objects; second, calls for artificial objects; third, calls for course and distance. But course is sometimes designated as the third class, and distance as a fourth one. To those various kinds of calls may be added a call for quantity. The first class mentioned includes streams, hills, mounds, nature of the soil and so forth. The second class includes artificial objects such as stakes, mounds, marked trees, etc. Standing alone, unaided and unmodified by extraneous evidence, these calls prevail in the order named, and the true and correct location of land is ascertained by the application of all or any of them to the particular case."

The primary purpose in all boundary cases is to locate the survey as it was intended to be located on the ground by the original surveyor. W. T. Carter & Bro. v. Collins, Tex.Civ.App., 192 S.W. 316, error ref.

We are not permitted to accept this construction in view of all of the field notes and maps in evidence.

The beginning corner of the Jordan as well as its southeast corner and the next three corners are not in dispute so its boundaries can be determined accurately from its own calls, and there is no justification for recourse to the field notes of other surveys to create an inconsistency in the calls; and admittedly the south boundary line of the M. B. Lewis is common with the Jordan for at least a large portion of its south line. Petty v. Paggi Bros. Oil Co., Tex.Com.App., 254 S.W. 565 adopted by Sup.Ct.

In Hammonds v. Jones, 275 Ky. 788, 122 S.W.2d 736, 738, the court said: "We realize that it is the rule that where natural objects are definitely established, such locations control over courses and distances, but we are also of the opinion that the disruption of a large number of courses and distances in the survey by the location of a natural object at a point claimed may also be taken into consideration in determining whether or not the location of the natural object has been definitely and satisfactorily established."

In the case of Taylor v. Higgins Oil & Fuel Co., 2 S.W.2d 288, error dism., the Court of Civil Appeals of Texas, Beaumont, opinion by Justice Walker, there is a discussion of the Rule of Boundary construction, and of other rules to be observed in locating boundary lines, and many cases and authorities are cited which we believe to be applicable in this case and to which we refer.

The assignments made by appellants are overruled and the counterpoints made by appellees are sustained.

In view of our disposition of this case on appeal, the cross assignment of appellees becomes immaterial.

The judgment of the trial court is affirmed.

Affirmed.

On Appellants' Motion for Permission to File Motion for Rehearing

PER CURIAM.

We affirmed the trial court's judgment on December 19, 1951, on which date our clerk notified counsel for appellants of such fact in the manner prescribed by Rule 457, T.R.C.P.

Appellants do not deny timely receipt of this notice.

On the same date, towit, December 19, 1951, our clerk mailed to appellants' counsel a copy of the court's opinion in this case. The opinion, on the last page and below the typed signature of the Chief Justice bore the notation: "Affirmed. Filed January 2, 1952."

Appellants' attorney states in his affidavit that he did not learn until January 9, 1952, that the date on the original opinion had been changed from January 2, 1952 to December 19, 1951, and that "if Appellants had known that the date of such original opinion had been changed to December 19, 1951, and filed on that date, they would have filed their Motion for Rehear-

ing on or before fifteen (15) days there-after."

It is conceded that appellants' motion for rehearing was not tendered for filing within the time prescribed by Rules 458 or 5, T.R.C.P.

■■ We have no authority to extend the time for filing a motion for rehearing. Reynolds v. Dallas County, 146 Tex. 372, 207 S.W.2d 362.

Furthermore, we fail to see how appellants could have been misled. Certainly counsel could not assume that our opinion was mailed to him two weeks before it was delivered.

Counsel having timely received the notice required by the rules advising him of our decision had no right to rely upon an impossible date on the bottom of the opinion which, after all, formed no part of the opinion.

Appellants say under Rules 316–319 we have authority to correct clerical errors appearing in our judgments. There is no clerical error in our judgment, the complained of error appears only on the copy of our opinion mailed by the clerk to counsel. The letter giving notice to appellants' attorney of our disposition of the cause correctly advised him of the date of our judgment. Rule 457, supra.

The motion is overruled.

Motion overruled.